**James LIPTON, Plaintiff,**

v.

**THE NATURE COMPANY, et al., Defendants.**

**No. 91 Civ. 3007 (RO).**

United States District Court, S.D. New York.

Jan. 16, 1992.

Mark P. Ressler, Kay Collyer & Boose, New York City, for plaintiff.

Noel M. Cook, Owen Wickersham & Erickson, San Francisco, Cal., Janet Dore, Morgan & Finnegan, New York City, John P. Sutton, San Francisco, Cal., for defendants.

## OPINION AND ORDER

OWEN, District Judge:

Plaintiff James Lipton is an etymologist and author of the copyrighted book, *An Exaltation of Larks*, published originally in 1968, with a second edition in 1977 and an expanded edition in 1991. The section of the book at issue here involves seventy-six "terms of venery"—collective terms relating to nature and hunting. Defendant The Nature Company, under a license from defendant Michael Wein, manufactures and sells various products on which are imprinted seventy-three terms referred to as "Multitudes"; these terms duplicate Lipton's terms of venery relating to animals and to nature. Wein has copyright registration for his compilation of terms, and he licensed the terms to Nature. Of these seventy-three terms, seventy-two replicate Lipton's exactly. In addition, Lipton represents that the coordination and arrangement of the Multitudes terms is substantially similar to the coordination and arrangement Lipton uses in his book, and that several of the Multitudes terms even repeat translation and grammatical errors that appear in earlier editions of *An Exaltation of Larks*.

Lipton discovered the defendants' alleged infringements only when he sought to license his terms of venery for commercial use. He now sues alleging a violation of the copyright laws, claiming that Wein took

his Multitudes terms from *An Exaltation of Larks.* While in its catalogue advertising the Multitudes products, Nature asserts that Wein surveyed the English language back to its roots to compile the Multitudes list, Wein's counsel maintained at oral argument that Wein found the Multitudes terms on a scarf and adopted them as his own, and that they are therefore part of the public domain.

■ At oral argument, I raised the issue *sua sponte* as to whether Lipton's compilation of terms is copyrightable. I conclude on this record that it is. Although some of the terms in his compilation are generally known and in the public domain, many others were creatively interpreted from Middle English and are therefore products of his imagination. To compile his work, Lipton perused fifteenth century texts and manuscripts, many of which were written in Middle English. Lipton translated the terms from Middle English to Modern English, choosing modern definitions for words which had either conflicting or no apparent parallels in Modern English. Lipton asserts that these terms varied widely from list to list in number, spelling, orthography, and often in the choice of terms used. Lipton notes that his translation of these terms was often a result of his own subjective whim or preference in determining which term to use and in which form to translate it. He used his knowledge and familiarity with the culture of Middle English, as well as his own creativity, in selecting the terms of venery that appear in *An Exaltation of Larks.* Lipton's arrangement of the terms was original to him; he did not follow any sort of alphabetical, chronological, or other system.

Because Lipton's choice was a creative process unique to him, and because it is unlikely that another individual, even a scholar of Middle English, would choose both the same selection of animals and the identical terms for the collectives, Lipton's work comes within the protection of the copyright laws. The seventy-six terms of venery he includes are not a comprehensive or complete list of all the terms of venery; rather, Lipton used his own judgment both

in the selection of terms and in their arrangement, considering such factors as the fluidity of language and the lyrical and poetic potential of the arrangement.

Lipton's work is certainly that envisioned by the Supreme Court as deserving of protection under the Copyright Laws. In *Feist Publications, Inc. v. Rural Telephone Service Company, Inc.,* — U.S. ——, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991), the Court reaffirmed the principle that copyright protection should be granted to original compilations of fact. An original compilation is defined as one involving the collection and assembly of preexisting data, the selection, coordination or arrangement of that data, and a resulting work that is original by virtue of the selection, coordination or arrangement of the data contained in the work. *Feist,* 111 S.Ct. at 1293. Choices regarding selection and arrangement of facts, made independently by the compiler and entailing even a minimal degree of creativity, are deserving of protection. *Feist* at 1289. While even considerable labor and research efforts are not entitled to copyright protection; however, both creative product and subjective selection and arrangement of information are. *See Eckes v. Card Prices Update,* 736 F.2d 859, 862 (2d Cir.1984).

Assuming that at trial the foregoing is proven, Lipton is entitled to enjoy the fruits of his creative labor, and to profit from the ability to license his work to others. Other issues of fact to be tried are the origin of Wein's Multitudes terms and whether they infringe upon Lipton's compilation.

I now address defendants' motion to dismiss or transfer this action for improper venue and failure to join an indispensable party, or, alternatively, to transfer this action to the Northern District of California for the convenience of the parties.

■ Both the Rule 19 motion regarding indispensability of parties and the forum non conveniens motion are addressed to the court's equitable discretion. Necessary and indispensable parties can only be determined in the context of the particular litigation; the inquiry must be a fact-based one. *Ente Nazionale Idrocarburi v. Prudential*

*Securities Group, Inc.*, 744 F.Supp. 450, 456 (S.D.N.Y.1990). Wein's interests are directly at stake here; an infringement action against Nature necessarily involves Wein's own rights and activities, since Lipton is requesting that Wein's copyright in the Multitudes collection be cancelled and his commercial use of the terms enjoined. If Wein were not a party to this suit, Nature would face a strong likelihood of being subject to duplicative litigation and inconsistent judgments. Wein is thus an indispensable party, as the validity of his copyright is directly at stake.

Nature and Wein contend that because Wein is an indispensable party, but is not subject to jurisdiction in New York under any of the provisions of the CPLR, the action must be transferred.[1] I find, however, that Wein is subject to jurisdiction in New York. Lipton has made a prima facie showing that this court has jurisdiction over Wein. Under the long-arm statute, CPLR Section 302, Wein can be a defendant in New York. The claims here arise from Wein's contract to supply goods or services in New York, CPLR Section 302(a)(1), allege the commission by Wein of a tortious act outside New York causing Lipton injury within New York, CPLR Section 302(a)(2), and Wein has engaged in tortious activity which he should reasonably have expected would have consequences within New York, CPLR Section 302(a)(3).

The copyright venue statute, 28 U.S.C. § 1400(a), provides that venue in copyright cases is proper "in the district in which the defendant or his agent resides or may be found." A defendant "may be found" in any district in which he is subject to personal jurisdiction. *Meyer v. Sharron*, 1986 Copyright L.Dec. (CCH) ¶ 25,967, 1986 WL 8311 (S.D.N.Y.1986). Under CPLR Section 302(a)(1), a court may exercise personal jurisdiction over any non-domiciliary who "contracts anywhere to supply goods or services in the state." Nature supplied the allegedly infringing goods to consumers in New York pursuant to its license agreements with Wein; under CPLR 302(a)(1), this is a contract to supply goods or services in the state.

In *Greenky v. Irving Music, Inc.*, 1981 Copyright L.Dec. (CCH) ¶ 25,276, 1981 WL 1370 (S.D.N.Y.1981), jurisdiction was held to exist over a non-domiciliary song composer who had assigned his performance rights in a song to a music licensing company which, in turn, had licensed the song to radio stations, television networks, and other users of music. The agreement between the composer and the music licensing company was held to be a contract to supply goods or services in New York, and as such was sufficient to establish personal jurisdiction. In *Meyer v. Sharron*, 1986 Copyright L.Dec. (CCH) ¶ 25,967, 1986 WL 8311 (S.D.N.Y.1986), the court held that the assignment of a non-domiciliary's public performance rights in a song to ASCAP represented a contract to supply goods or services in the state, regardless of where the non-domiciliary composer had entered into the agreement with ASCAP, and regardless of the fact that ASCAP was merely a licensing clearinghouse which licensed the music to users in New York and elsewhere. The long-arm statute thus expressly provides for jurisdiction over non-domiciliaries who contract anywhere to supply goods or services in the state. Venue is thus proper in New York.

Copyright infringement is a commercial tort that is "deemed to take place at the point of consumer purchase." *Business Trends Analysts v. Freedonia Group, Inc.*, 650 F.Supp. 1452, 1456 (S.D.N.Y. 1987). Even if a non-domiciliary defendant

---

1. Lipton contends that jurisdiction over Wein may be asserted through agency principles. Wein is not an employee or agent of Nature; he merely entered into non-exclusive licenses with Nature regarding the Multitudes terms. Wein does not fall within any of the categories that are generally believed to imply an agency relationship. *See, e.g., Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194 (2d Cir.), *cert. de-* nied, —— U.S. ——, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990) (factors might include the existence of an express agency agreement, actions taken by a New York-based entity with respect to third parties that are binding on the foreign defendant, or solicitation by a non-profit New York entity for the benefit of a commonly-owned foreign corporation).

1036

commits infringement through sales by independent brokers or retail merchants in New York, this constitutes tortious conduct within New York and subjects the defendant to jurisdiction under CPLR Section 302. *Heritage House Frame and Moulding Co., Inc. v. Boyce Highlands Furniture Co., Inc.,* 88 F.R.D. 172, 173 (E.D.N.Y. 1980). Here, Wein's infringing Multitudes terms are being sold by Nature, an independent licensor, in New York. The tort therefore takes place at the place of purchase in New York. Since Lipton allegedly suffered a loss in New York, New York is the situs of the tort. The actual seller of the allegedly infringing product need not be a formal agent of the defendant; the term agent is given a broad interpretation. *Grove Press, Inc. v. Angleton,* 649 F.2d 121, 122 (2d Cir.1981). Nature acted pursuant to its licensing agreement with Wein, paid him royalties based on sales, and used Wein's name in its advertising literature. Wein's license agreement provided that he would receive from Nature royalties ranging from 3% to at least 5%, and sometimes more, of the retail sale price of each Multitudes product sold through Nature's mail order catalogue or stores.

Similarly, Wein receives royalties and benefits from media advertising and the mail order catalogue including the Multitudes products. Although Nature is not in an agency relationship with Wein, Wein is certainly responsible for and benefitting from the sale of Nature products in New York. Wein thus falls within New York's long-arm statute: the claims for relief that Lipton make clearly arise from Wein's contract to supply goods or services in the state, arguably constitute the commission by Wein of a tortious act either causing Lipton injury within New York. If Lipton has suffered actionable harm, he has clearly suffered it in New York, and Wein's compilation of terms is the proximate cause of that harm.

Also, on this record it could be found that Wein has committed a tortious act outside New York with consequences in New York by entering into license agreements warranting that the collective terms infringed no other copyrights. The licensor of an infringing trademark commits a predicate tort for the purposes of New York long-arm jurisdiction by the act of licensing, and may be held accountable in New York. *Pony International, Inc. v. Genfoot America, Inc.,* 223 U.S.P.Q. 1150, 1983 WL 691 (S.D.N.Y.1983). He should reasonably have foreseen that the consequences of this agreement would result in injury to Lipton in New York.

Addressing Nature's argument that the balance of the conveniences to the various parties strongly favors California, even if jurisdiction is proper in New York, I find that Nature has not met its burden of persuasion required to override Lipton's choice of forum. Nature, operating ten stores in the area covered by the Northern District of California, and only one store in the Southern District of New York, contends that jurisdiction would be far more appropriate in California. However, the plaintiff's choice of forum is generally accorded great weight, and is deferred to unless the balance is strongly in favor of the defendant. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *Seagoing Uniform Corp. v. Texaco, Inc.,* 705 F.Supp. 918, 936 (S.D.N.Y.1989).

The moving party bears the heavy burden of demonstrating the desirability of transfer. *Rackman v. Texas Instruments, Inc.,* 712 F.Supp. 448, 450 (S.D.N.Y.1989). Here, Lipton has chosen the Southern District of New York; Nature and Wein are both subject to jurisdiction here but would prefer to litigate in California. The convenience of the parties appears split between New York and California. I cannot reach a firm enough assessment as to the relative convenience of witnesses or ease of production of documentary evidence. I therefore deny Nature's motion to transfer.