James LIPTON, Plaintiff–Counter–Defendant–Appellee,

v.

The NATURE COMPANY, dba The Nature Company of California, Defendant–Cross–Claimant,

Michael Wein, Defendant–Cross–Defendant–Appellant,

Animal Wisdom Enterprises, Inc., Defendant–Counter–Claimant–Appellant.

No. 1858, Docket 94–9123.

United States Court of Appeals, Second Circuit.

Argued Sept. 18, 1995.

Decided Nov. 28, 1995.

Nancy J. Felsten, New York City (Marcia B. Paul, Kay Collyer & Boose, New York City, on the brief), for Plaintiff–Counter–Defendant–Appellee.

L. Donald Prutzman, New York City (Stecher Jaglom & Prutzman, New York City, John P. Sutton, Haverstock, Medlen & Carroll, San Francisco, California, on the brief) for Defendants–Counter–Claimants–Appellants.

Before: MINER, MAHONEY, and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

This is an appeal from a final judgment of the United States District Court for the Southern District of New York (Richard Owen, *Judge* ), granting plaintiff-appellee James Lipton's ("Lipton") motion for summary judgment on his copyright and Lanham Act claims against defendants Animal Wisdom Enterprises, Inc. ("AWE"), its president and principal stockholder, Michael Wein ("Wein"), and The Nature Company, ("Nature").[1] The district court's order and final judgment with respect to Wein and AWE, entered on October 14, 1994, implemented various memorandum opinions and orders previously issued by the court. These included a finding that the plaintiff-appellee's work was protectible under copyright law, *Lipton v. The Nature Co.*, 781 F.Supp. 1032 (S.D.N.Y.1992), an award of summary judgment to the plaintiff on his copyright and Lanham Act claims, and a finding that the defendants were willful infringers. The Oc-

tober 14 order awarded the plaintiff enhanced statutory damages in the amount of $100,000, costs and attorneys' fees, and entered a permanent injunction restraining the defendants from further infringement. Wein and AWE appeal.

## I. BACKGROUND

At issue in this case is a compilation of "terms of venery"[2]—collective terms for identifying certain animal groups—gathered and published by the author and etymologist James Lipton in his book, *An Exaltation of Larks*. The first edition of the book was published in 1968, and two subsequent editions were published in 1977 and 1991; Lipton holds a valid copyright to all three versions of the book. Lipton's complaint alleged that the defendants created various posters and other products that infringed the copyright of the first and second editions of his book, in violation of 17 U.S.C. § 501 *et seq.*, and unfairly competed with Lipton, in violation of § 43(a) of the Lanham Trademark Act, 15 U.S.C. § 1125.

Lipton compiled his terms of venery through research of various fifteenth-century texts and manuscripts. According to Lipton, he translated the terms from Middle English to modern English and arranged them based on their "lyrical and poetic potential." The first and second editions of the book, which include scattered illustrations and explanatory text, were a considerable success and have sold over 150,000 copies to date. In 1990, in an attempt to further capitalize on the success of his book, Lipton sought to license his compilation for use on various products. In the course of doing so, he discovered that Nature had already licensed the rights to a virtually identical compilation of terms of venery from the defendant, Wein.

In 1988, Wein, doing business as "Animal

---

1. Lipton has since settled his claims against Nature, which is not a party to this appeal.

2. The phrase "terms of venery" is Lipton's. "Venery" is defined by Webster's Third New International Dictionary as "game" or "animals that are hunted." Examples of such terms include "a pride of lions," "a rafter of turkeys," "a gaggle of geese," "a shrewdness of apes," "a murder of crows," and "a parliament of owls." Lipton's third edition includes "human" terms of venery including "a bench of judges," "a college of cardinals," and "a board of trustees."

Wisdom,"[3] filed for copyright registration of a compilation of animal terms, representing that the work was original to him. Wein manufactured and sold posters ("the Wein posters") of the compilation to various zoos, libraries, and other entities. In 1988, he approached Nature, a retailer specializing in products about the environment, to market his compilation. Between 1989 and 1990, Nature and Wein entered into a series of licensing agreements by which Nature acquired the right to use Wein's compilation of animal terms on a series of posters, t-shirts, and other products, which came to be known as the "Multitudes" products. Nature sold these products both in its stores and through its catalogs. The catalog copy accompanying the Multitudes poster stated, "Michael Wein has surveyed the English language back to its earliest roots to compile a list of the most remarkable ... names of animal multitudes ever assembled." The Multitudes poster, as well as a note cube marketed by Nature, included copyright notices in the names of Wein and Nature.

Simultaneously, Wein continued to market and sell various adaptations of the initial Wein poster. In 1991, Wein incorporated Animal Wisdom Enterprises to market and distribute these products as the "Animal Congregations" line of merchandise. In its promotional brochure, AWE stated that it had "thoroughly researched dozens and dozens of animals, fish and birds to uncover correct terminology."

Upon learning of Nature's and Wein's actions, Lipton sent a letter demanding that they stop and requesting compensation for the alleged infringement. When they refused, Lipton brought the present suit alleging copyright infringement and unfair competition.

Wein denies copying any edition of Lipton's book and claims that the terms used on the Wein poster and the Multitudes products were copied from a banner or scarf ("the scarf") that he received in the late 1960's while working as an advertising executive in New York City. According to Wein, this scarf, which listed 73 animal terms and one cryptic term—"a synoptic of SCI"—was an unsolicited promotional item from an unidentified source. This scarf was marked as an exhibit during Wein's deposition and was available to the district court. Both Wein and his art director, Michael English, testified that the scarf was the sole source of the compilation featured on the initial poster that Wein marketed to libraries and museums. According to Wein, he decided to market the terms on the scarf as a poster in 1988. Both he and English inspected the scarf, and finding no copyright notice, typeset the terms listed on it. Wein and English contend that the order of the terms on the scarf was "shuffled" on the poster to place some of the more common, recognizable terms at the beginning of the poster and "to make [the terms] flow around the pieces of artwork inserted."

Wein's testimony about the scarf is contradicted by the fact that prior to the filing of Lipton's complaint, he represented to Nature and to Lipton's attorney that he had compiled the list himself from terms that he had written on slips of paper over the years. However, since the filing of this action, Wein has consistently stated that the scarf was the source of the compilation. Wein contends that after approaching Nature in the summer of 1988, he consulted another source, John Train's *Remarkable Words with Astonishing Origins,* but only used the Train book to check the accuracy of the terms in the compilation that he had given to Nature. Wein claims that it was not until several years later, in connection with AWE's "Animal Congregations" line, that he conducted further research and incorporated additional terms of venery that did not appear on the scarf.

On January 16, 1992, the district court denied the defendants' motion to dismiss, finding that Lipton's compilation of terms was original to him and therefore protectible under copyright law. *Lipton v. The Nature Co.,* 781 F.Supp. 1032 (S.D.N.Y.1992). By opinion dated September 23, 1993 and order

**3.** Wein did business as "Animal Wisdom" as early as 1988—three years before the official

incorporation of "Animal Wisdom Enterprises."

and judgment entered October 14, 1994, the district court granted summary judgment in favor of the plaintiff on all counts against defendants Wein and AWE. The court found Wein and AWE liable for copyright infringement and, citing Wein's "contradictory explanations" for the source of his compilation, found their infringement to be willful pursuant to 17 U.S.C. § 504(c)(2). The court also found Wein and AWE liable for violation of the Lanham Act, noting:

> Nature featured two separate copyright notices on its poster, in Wein's name for the compilation, and in Nature's name. These copyright notices ... are false designations of origin, and constitute actionable false claims of originality under § 43(a).
>
> ....
>
> ... Plaintiff's proof ... gives rise to a rebuttable presumption of consumer confusion, which in turn entitles plaintiff to damages under the Lanham Act.

Opinion of Sept. 23, 1993, at 12, 14. Accordingly, the district court enjoined the defendants from use of any terms that, together or separately, are substantially similar to those found in Lipton's book and awarded Lipton costs, attorneys' fees, and enhanced statutory damages in the amount of $100,000.

## II. DISCUSSION

### A. *The Summary Judgment Standard*

 We review a district court's grant of summary judgment *de novo* to determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Healy v. Rich Prods. Corp.*, 981 F.2d 68, 72 (2d Cir. 1992). Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Finally, " 'mere conclusory allegations or denials' " in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978)).

### B. *The Copyright Claim*

██ A successful claim of copyright infringement pursuant to the Copyright Act, 17 U.S.C. § 501 *et seq.*, requires proof that (1) the plaintiff had a valid copyright in the work allegedly infringed and (2) the defendant infringed the plaintiff's copyright by copying protected elements of the plaintiff's work. *Key Publications v. Chinatown Today Publishing Enters.*, 945 F.2d 509, 514 (2d Cir. 1991). Under 17 U.S.C. § 504(c)(2) a plaintiff is entitled to enhanced statutory damages of up to $100,000 upon proof that a defendant's infringement was willful. Wein and AWE challenge the district court's holding that they engaged in copyright infringement of Lipton's book and that their asserted infringement was willful.

#### 1. *Protectibility*

It is undisputed that Lipton has a valid copyright in the first and second editions of

his book, *An Exaltation of Larks.* The defendants argue that while Lipton's book itself is protected, the mere compilation of the collective nouns—without the accompanying artwork and explanatory text—is not protectible because the terms are facts, and not the original work of Lipton.

 Although facts are considered to be in the public domain and therefore not protectible under copyright law, *see Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 347, 111 S.Ct. 1282, 1288–89, 113 L.Ed.2d 358 (1991), a compilation of facts may be protectible in certain instances.[4] Three requirements must be met for a compilation to qualify as protectible: "(1) the collection and assembly of preexisting data; (2) the selection, coordination, or arrangement of that data; and (3) a resulting work that is original, by virtue of the selection, coordination, or arrangement of the data contained in the work." *Key,* 945 F.2d at 512 (citing *Feist,* 499 U.S. at 357, 111 S.Ct. at 1293–94).

The district court held that the compilation of terms in Lipton's book was protectible: "[Lipton] used his knowledge and familiarity with the culture of Middle English, as well as his own creativity, in selecting the terms of venery that appear in *An Exaltation of Larks.* Lipton's arrangement of the terms was original to him; he did not follow any sort of alphabetical, chronological, or other system." 781 F.Supp. at 1034. The defendants dispute this finding, arguing that Lipton's selection and arrangement do not demonstrate the requisite originality.

 The amount of creativity required for copyright protection of a compilation is decidedly small. "Original, as the term is used in copyright, means only that the work was independently created by the author ... and that it possesses at least some minimal degree of creativity." *Feist,* 499 U.S. at 345, 111 S.Ct. at 1287. Although the defendants correctly assert that the terms themselves are not original, the uncontradicted evidence is that Lipton's *selection* and *arrangement* of the terms were original. In compiling his

work, Lipton assembled terms from various fifteenth century texts and manuscripts. They were selected from numerous variations of hundreds of available terms. Furthermore, the defendants offer nothing to contradict Lipton's assertion that he selected the terms "based on [his] subjective, informed and creative judgment."

Lipton's arrangement of the terms is similarly protectible. The defendants do not challenge Lipton's statement that his compilation does not replicate the sequence of terms in any of the fifteenth century sources that he consulted, nor do they contradict his assertion that he repeatedly rearranged the terms based upon his own aesthetic judgment. Instead, they argue that because Lipton's arrangement does "not follow any sort of alphabetical, chronological, or other system," it is inherently unprotectible under copyright law. This argument misconstrues governing case law. We have held that while "mechanical" arrangements, such as alphabetical or chronological order, do not display the requisite originality, any minimal level of creativity is sufficient to render an arrangement protectible. *Key,* 945 F.2d at 514 (finding arrangement of businesses in directory to be protectible where "[t]he arrangement is in no sense mechanical" and "entailed the de minimis thought needed to withstand the originality requirement"); *cf. Feist,* 499 U.S. at 363, 111 S.Ct. at 1296–97 (no copyright protection where names arranged alphabetically in white pages directory; "[t]he selection and arrangement of facts cannot be so mechanical or routine as to require no creativity whatsoever."). Because the defendants have offered nothing—apart from their conjecture that the list was random—to contradict Lipton's assertions that his arrangement was the product of his creative and aesthetic judgment, there is no material factual dispute. The district court correctly found Lipton's compilation to be protectible.

### 2. *Infringement*

 The second prong of a successful copyright action requires proof that the de-

---

**4.** A "compilation" is defined by 17 U.S.C. § 101 as "a work formed by the collection and assembling of pre-existing materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."

fendant copied protected elements of the plaintiff's work. Since direct evidence of copying is seldom available, "[c]opying may be inferred where a plaintiff establishes that the defendant had access to the copyrighted work and that substantial similarities exist as to protectible material in the two works." *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48 (2d Cir.), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986). In the alternative, "[i]f the two works are so strikingly similar as to preclude the possibility of independent creation, 'copying' may be proved without a showing of access." *Ferguson v. NBC, Inc.*, 584 F.2d 111, 113 (5th Cir.1978); *Gaste v. Kaiserman*, 863 F.2d 1061, 1067–68 (2d Cir.1988) (same).

 The court found Wein and AWE liable for copyright infringement as a matter of law based on the "overwhelming similarity of Wein's 'product' to Lipton's work." In so doing, the district court rejected Wein's explanation that he copied his list of terms from the scarf as "contradictory" and "inherently incredible." While it is true that Wein initially gave Nature and Lipton's attorney a different explanation for the origin of his list of terms, since the inception of the suit, Wein has consistently maintained that he copied the terms directly from the scarf. This is corroborated by the deposition testimony of his art director, Michael English, and the fact that Wein produced the scarf during discovery. For the purposes of a summary judgment motion, courts are required to view the facts in the light most favorable to the parties opposing the motion and to suspend judgments on credibility. Thus, Wein's prelitigation statements about the origin of his list did not permit the court to disregard his explanation that he copied the terms from the scarf.

 Wein's copying of the scarf is in any event no defense to a claim of infringement. As a matter of law, "innocent infringement," or copying from a third source wrongfully copied from the plaintiff, without knowledge that the third source was infringing, does not absolve a defendant of liability for copyright infringement. *See D.C. Comics Inc. v. Mini Gift Shop*, 912 F.2d 29, 35 (2d Cir.1990); 3 MELVILLE B. NIMMER & DAVID NIMMER, NIM-

MER ON COPYRIGHT § 13.08, at 13–289 (1995); *Dolori Fabrics, Inc. v. The Limited, Inc.*, 662 F.Supp. 1347, 1354–55 (S.D.N.Y.1987) (Lumbard, J., sitting by designation) (finding clothing retailer liable for infringement based on retailer's sale of dresses made from fabric that, unbeknownst to retailer, infringed textile converter's copyright); *see also Fitzgerald Publishing Co. v. Baylor Publishing Co.*, 807 F.2d 1110, 1113 (2d Cir.1986) ("[I]ntent or knowledge is not an element of infringement."). If Wein and AWE did copy the list of terms from the scarf, that defense is unavailing if the scarf itself was an unauthorized copy of Lipton's protected compilation. The inquiry then becomes whether the scarf itself was infringing—that is, whether its manufacturer had access to Lipton's work and substantial similarities exist between the scarf and Lipton's compilation, or whether the two works are so strikingly similar as to preclude the possibility of independent creation.

 A comparison between the selection and arrangement of terms in Lipton's book and the selection and arrangement of those on the scarf leads us to conclude that the two are "strikingly similar." Accordingly, we find that scarf infringed on Lipton's copyright. First, the scarf includes essentially the same *selection* of animal-related terms as Lipton's book. In principle, the scarf could have included any of the hundreds of animal terms listed in various fifteenth century texts and other resources, but in fact, it mimics the list in Lipton's book almost exactly. Out of the 77 different animal terms of venery that appear in the first edition of *An Exaltation of Larks*, 72 of them are listed on the scarf. Indeed, the scarf includes only one animal term—"covey of quail"—that does *not* appear in the Lipton compilation. Furthermore, the scarf contains at least six translation errors that existed in Lipton's first two editions. Although some of those errors do exist in other sources, they further support our conclusion that the scarf could not have selected the same terms independent of Lipton's book. *See Eckes v. Card Prices Update*, 736 F.2d 859, 863 (2d Cir.1984) ("[C]ourts have regarded the existence of common errors in two similar works as the

strongest evidence of piracy.") (internal quotation marks omitted).

Second, the *arrangement* of terms on the scarf is also so strikingly similar to the arrangement in Lipton's book as to preclude an inference of independent creation. Of the first twenty-five terms on the scarf, twenty-four are listed in Lipton's book, and all but four of them are listed in the same order. In fact, the thirteenth through the twenty-fifth terms on the scarf are listed in precisely the same order as in the first edition of *An Exaltation of Larks*.[5] In at least four other places on the scarf a string of four or more terms appears in the same order as in Lipton's book. In light of the millions upon millions of possible arrangements,[6] the scarf's close mimicking of Lipton's arrangement leads inevitably to a finding of improper copying.

Wein fully acknowledged that he copied the scarf for use on the original Wein products, Nature's Multitudes products, and the Animal Congregations line currently being distributed by Wein through AWE. By copying the scarf—an unauthorized copy that infringed on Lipton's protected compilation—Wein and AWE also infringed. We therefore affirm the district court's order of summary judgment to Lipton on its copyright claim against Wein and AWE.

### 3. *Willfulness*

The defendants also challenge the district court's finding that their infringement of Lipton's copyright was willful. Under 17 U.S.C. § 504(c), a copyright owner may elect to recover statutory damages in lieu of actual damages. When an owner establishes that the defendant's infringement was "willful," the statute permits the court, at its discretion, to increase its award of damages to a maximum of $100,000. 17 U.S.C. § 504(c)(2). We have previously held that a defendant's copyright infringement will be found willful pursuant to § 504(c)(2) where the defendant

had knowledge that its conduct constituted infringement or showed reckless disregard for the copyright holder's rights. *N.A.S. Import Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252 (2d Cir.1992).

On Lipton's motion for summary judgment, the district court found Wein and AWE to be willful infringers, basing its determination on the fact that Wein "continually changed his story as to the origin of his terms such that any good faith protestations on his part are inherently incredible." The defendants argue that (1) the issue of their willful infringement was an inquiry into their state of mind that must be decided by a jury—not by the court on summary judgment, and (2) even if willfulness could be decided on summary judgment, the district court's ruling was in error because it ignored Wein's claim that he copied the terms from the scarf.

Although courts are generally reluctant to dispose of a case on summary judgment when mental state is at issue, it is permissible to do so where there are sufficient undisputed material facts on the record to make the question appropriate for summary judgment. *See Resource Developers, Inc. v. Statue of Liberty–Ellis Island Found., Inc.*, 926 F.2d 134, 141 (2d Cir.1991). However, this is not such a case. Wein disputes the assertion that he willfully copied from *An Exaltation of Larks*, arguing that he innocently copied from the scarf what he believed to be an unprotectable compilation. Determinations of credibility are within the province of the jury and may not be resolved on summary judgment. *United States v. Rem*, 38 F.3d 634, 643–44 (2d Cir.1994). The district court erred in concluding, on a summary judgment motion, that Wein willfully infringed Lipton's copyright based on its determination that Wein's story about the scarf was "inherently incredible." Accordingly, we reverse the district court's award of sum-

---

**5.** The following terms are listed in the same order on the scarf and in the first edition of *An Exaltation of Larks:* leap of leopards, pod of seals, sloth of bears, rafter of turkeys, pace of asses, walk of snipe, gam of whales, nest of rabbits, gang of elk, fall of woodcocks, dule of doves, skulk of foxes, dissimulation of birds.

**6.** Taking the 72 terms that appear both on the scarf and in Lipton's book, the number of possible orderings would be 72 factorial (72*71*70 ... *3*2*1), or $6.12*10^{103}$.

mary judgment to Lipton on the question of willful infringement and its award of enhanced damages pursuant to 17 U.S.C. § 504(c)(2). We remand for trial on the question of Wein's willfulness or reckless disregard of Lipton's copyright.

### C. Unfair Competition Claims under the Lanham Act

The defendants also challenge the district court's award of summary judgment to Lipton on his unfair competition claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Subsection (A) of 15 U.S.C. § 1125(a)(1)[7] prohibits any misrepresentation likely to cause confusion as to the source or the manufacturer of a product. Lipton alleges that the defendants engaged in the prohibited practice of "reverse passing off"—that is, he claims that Wein and AWE attempted to sell Lipton's original compilation under Wein's own name, in violation of the Lanham Act.

■ A successful claim for "reverse passing off" under the Lanham Act requires that the plaintiff prove (1) that the work at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin. *Waldman Publishing Corp. v. Landoll, Inc.,* 43 F.3d 775, 781–85 (2d Cir.1994).

■ In the instant case, the district court based its finding of a Lanham Act violation on the fact that the copyright notices on the infringing products were false designations of origin. We find that, as a matter of law, a false copyright notice alone cannot constitute a false designation of origin within the meaning of § 43(a) of the Lanham Act.

In *Kregos v. Associated Press,* 937 F.2d 700, 710–11 (2d Cir.1991), we rejected a plaintiff's attempt to turn its successful copyright claim into a Lanham Act claim for false

designation of origin. That case involved a dispute over a form used to display baseball pitching statistics created and distributed by the plaintiff, Kregos, and copied and published by the defendants, Sports Features Syndicate, Inc. ("Sports Features") and the Associated Press ("AP"). AP published the copied form with Sports Features' copyright, in violation of Kregos' protected interest in his original form. Although we found a copyright violation, we rejected Kregos' Lanham Act claim, holding that "[i]f Kregos is simply saying that the notice is false in claiming creation by Sports Features in that the form is, under the copyright law, an infringement of Kregos' form, we reject his attempt to convert all copyright claims into Lanham Act violations." *Id.* at 711. Because the district court based its finding of a false designation of origin solely on the presence of Wein's false copyright notice, we reverse the award of summary judgment to Lipton on its Lanham Act claim.

In doing so, we offer no opinion as to whether or not there might be other grounds to support a Lanham Act claim based on false designation of origin. We merely hold that the existence of a false copyright notice alone is insufficient. In *Waldman,* we found that the "reproduction of a work with a false representation as to its creator" could support a finding of false designation origin where the defendant failed to credit the original creator. *Waldman,* 43 F.3d at 781. Indeed, this possibility is left open by *Kregos* itself, in which Chief Judge Newman noted that, although a false copyright alone would be insufficient as a false designation of origin, "Kregos could complain ... if Sports Features unfairly competed with him by falsely claiming that its form was originated by some well-known baseball player." *Kregos,* 937 F.2d at 710; *see also Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27, 37 (2d Cir.1982) (finding § 43(a) liability where copyright notice on infringing product

---

7. Section 1125(a)(1)(A), as amended, states:
 Any person who, on or in connection with any goods or services, ... uses in commerce ... any false designation of origin ... which—is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection,

 or association of such person with another person, or as to the origin ... of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action....

was not merely false, but also made the additional representation that the product was "original"); *Cognotec Services Ltd. v. Morgan Guaranty Trust Co.*, 862 F.Supp. 45, 51 (S.D.N.Y.1994) (finding no § 43(a) liability based on copyright infringement alone: "[t]here must exist some affirmative act whereby [the defendant] falsely represented itself as the owner....").

▮▮ Lipton counters that even if his false designation of origin claim fails, he is entitled to summary judgment on his claim for false advertising pursuant to 15 U.S.C. § 1125(a)(1)(B).[8] He argues that the statements made in the Nature catalog copy (that Wein researched the English language to its earliest roots), and in AWE's Animal Congregations promotional brochure (that he "thoroughly researched dozens and dozens of animals") were false, material, and misleading. We find that neither statement supports a false advertising claim against Wein or AWE. First, the statements in Nature's catalog are irrelevant, inasmuch as Lipton offers no evidence that these statements originated with Wein and Nature is not a party to this appeal. Second, Wein's general·assertions that he conducted thorough research in compiling his list of terms is mere "puffing" and does not constitute false advertising. *See Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir.1993).

▮▮ To establish a false advertising claim pursuant to § 43(a) the plaintiff must demonstrate that the message in the challenged advertisement is false. Falsity may be established by proving that (1) the advertising is literally false as a factual matter, or (2) although the advertisement is literally true, it is likely to deceive or confuse consumers. *McNeil–P.C.C., Inc. v. Bristol–Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir.1991). Lipton has offered nothing to contradict Wein's assertion that he conducted independent research at the New York Public Library prior to advertising the Animal Congregations line. Furthermore, Wein's

general assertion that the research he conducted was "thorough[ ]" is mere "puffing" and therefore, not actionable. "Subjective claims about products, which cannot be proven either true or false, are not actionable under the Lanham Act." *Groden v. Random House, Inc.*, No. 94 Civ. 1074, 1994 WL 455555, at *5 (S.D.N.Y. Aug. 23, 1994), *aff'd*, 61 F.3d 1045 (2d Cir.1995); *see Bose Corp. v. Linear Design Labs, Inc.*, 467 F.2d 304, 310–11 (2d Cir.1972) (finding defendant's claim that its "countless hours of research" led to the superior quality of its stereo speakers to be largely puffing). Thus, we reverse the district court's summary judgment on Lipton's Lanham Act claims.

### D. *The Injunction*

▮▮ As part of its order and judgment entered October 14, 1994, the district court issued a permanent injunction prohibiting Wein and AWE from copying, producing, or selling any infringing products or "any other products substantially similar to the said infringing products and/or incorporating, in whole or in part, plaintiff's copyrighted and inherently distinctive compilation." As part of an accompanying memorandum—intended as an amendment to the order and judgment—the district court expounded upon the scope of the injunction:

> In this case, we have a defendant who ... was wrongfully copying virtually plaintiff's entire compilation, [and] is now currently marketing T-shirts and other products using but single terms copied from [plaintiff's book].... Wein can hardly be permitted to market the parts, having been found to have misappropriated the whole. Therefore, I find that defendant Wein and [AWE] should be enjoined from any use of plaintiff's terms, together or separately....

Pursuant to 17 U.S.C. § 502, a permanent injunction may issue on such terms as the court deems "reasonable to prevent or restrain infringement of a copyright." This

---

**8.** Section 1125(a)(1)(B), as amended, states:
Any person who, on or in connection with any goods or services, ... uses in commerce ... any ... false or misleading representation of fact, which—in commercial advertising or pro-

motion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action....

phrase has been interpreted to mean that a court's authority to issue an injunction in a copyright case should be limited in scope to that part of the work that is protectible. 3 NIMMER & NIMMER, NIMMER ON COPYRIGHT § 14.06[C], at 14–109 ("The scope of the injunction therefore, should generally be no broader than the infringement, and because facts ... are never copyrightable, no injunction should extend to forbid reproduction of those facts...." (citing James L. Oakes, *Copyrights and Copyremedies: Unfair Use and Injunctions*, 38 *J. Copyright Soc'y* 63, 71–81 (1990))); *see Kepner–Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 538 (5th Cir.) (where district court found defendant liable for copyright infringement of computer program, it lacked the authority to generically enjoin the defendant from all future modifications of the program at issue), *cert. denied*, —— U.S. ——, 115 S.Ct. 82, 130 L.Ed.2d 35 (1994). Because summary judgment was proper solely on the plaintiff's copyright cause of action, we find the district court's injunction to be excessively broad. In the instant case, it is the compilation—*i.e.*, the selection and arrangement—of the terms that is protectible, not the individual terms themselves. Thus, the district court erred in enjoining Wein from producing and marketing a line of six different T-shirts and mugs, each displaying a different animal term of venery. By so holding, however, we do not foreclose the possibility that an injunction might be appropriate to prohibit Wein from producing or marketing a more extensive line of products that infringes Lipton's selection of terms. Accordingly, we remand with instructions to amend the injunction, and for such further proceedings as may be appropriate in the circumstances, including the award of costs and attorneys' fees with respect to the copyright claim.

### III. CONCLUSION

To summarize:

1. We affirm the district court's finding that plaintiff's collection of animal terms was a protectible compilation by virtue of its original selection and arrangement of those terms.

2. We affirm the grant of summary judgment on the plaintiff's copyright claim based on the defendants' admitted copying from an unauthorized and infringing source.

3. We reverse the award by summary judgment of enhanced statutory damages pursuant to 17 U.S.C. § 504(c)(2).

4. We reverse the grant of summary judgment on the plaintiff's Lanham Act claims on the grounds that (a) a claim for false designation of origin pursuant to 15 U.S.C. § 1125 may not be based solely on the presence of a false copyright notice, and (b) the defendants' representations about the extent of their research were merely "puffing" and did not constitute false advertising within the meaning of the Lanham Act.

5. We remand the cause to the district court for an appropriate amendment of the overbroad injunction, for trial on the question of the defendants' willfulness or reckless disregard of Lipton's copyright, and for such further proceedings as may be deemed appropriate in light of this opinion.