OPINION OF THE COURT
Lorraine S. Miller, J.
In what became widely known as the Texas Cadet Murder— the brutal murder of a beautiful coed by two dysfunctionally possessive 18-year-old military cadets, David Graham and Diane Zamora — the defining images were presented through 16 prom and “vanity” photographs of the slain 16 year old, Adrienne Jones. Many of the photographs appearing in the print and television media throughout the Nation originated from the Star-Telegram defendants who, shortly after the story broke, forwarded them to plaintiff Sipa Press, Inc. (Sipa) for media distribution.
Sipa is a New York corporation* whose primary business is the “syndication” of “newsworthy” photographs. As one of the three largest international purveyors of photographs, Sipa alleges that it has special expertise and contacts in the field and that New York is the single largest market for such pictures. Star-Telegram Operating, Ltd. is an umbrella company that operates the Fort Worth Star-Telegram, a daily newspaper in Texas. (Collectively these two defendants will be referred to as Star-Telegram.) Sipa alleges that Star-Telegram is in the business of creating and distributing newsworthy texts and images, with journalists and bureaus in New York, Washington, D.C., and Los Angeles, as well as Texas, and Sipa alleges that Star-Telegram derives 90% of its advertising revenue, or over $43 million, from advertisers, worldwide, through its three New York advertising agents, as well as undisclosed revenues from Internet advertising.
Star-Telegram and Sipa began their business relationship in 1993 when the former wanted to syndicate photos of the FBI siege of the Branch Davidian compound in Waco, Texas. Star-Telegram offered Sipa the opportunity to market to the media a large group of these photos under an oral contract which *553 required Sipa to split the royalty fee equally with Star-Telegram. Star-Telegram confirms that this “informal verbal course of dealing” was entered into by telephone, and the photographs themselves were transmitted electronically or by courier. No employee of Star-Telegram ever came to New York for any purpose related to this business arrangement which was never reduced to writing.
Sipa alleges that its obligation was to obtain the highest possible royalty payments for the photographs, and to comply with any restrictions on uses or sales that Star-Telegram might impose, such as date, geographical territory, and limits on the type of media to whom the pictures could be sold. In addition, Sipa ensured that Star-Telegram would be credited upon publication. For its part, Sipa alleges that it required Star-Telegram to secure all necessary rights to the pictures, and to defend, indemnify and hold Sipa harmless for its marketing and distribution of the images. Sipa states that from 1993 to date, it has received thousands of photographs from Star-Telegram, for a gross revenue stream of at least $60,000.
In September 1996, Star-Telegram delivered the 16 pictures of the murdered coed, Adrienne Jones (AJ photos), to Sipa. From that time through April 1998, Sipa duly syndicated the photos, selling to virtually all of the major print and television media, including defendant St. Martin’s Press, Incorporated (St. Martin’s), which published a book about the murder and trial of the cadets. .
However, on April 6, 1998, this came to an end when a lawsuit was commenced in the United States District Court for the Northern District of Texas, Texas Hot Looks v Sipa Press (docket No. 3-98CV0852-D) (Texas action). The Federal complaint alleges that Texas Hot Looks, Inc. (Hot Looks) owns the AJ photos and that Sipa and the other defendants violated its copyright. In addition to Sipa, the other defendants named in the Texas litigation were Star-Telegram, ABC Media LLC, doing business as ABC Media Enterprises, LLC, ABC Media Inc., Penguin Books USA Inc., St. Martin’s, Time, Inc., Newsweek, Inc., American Journal Inc., National Broadcasting Company, Inc., Paramount Pictures Corporation, E! Entertainment Television, Inc., ABC, Inc., CBS Corporation, Texas Monthly, Inc., Advanced Magazine Publishers, Inc., and Cable News Network, Inc. The majority of these defendants, Sipa alleges, are its clients to whom it distributed the photographs.
Because of that lawsuit, on October 8, 1998 Sipa brought this action in New York. As to Star-Telegram, Sipa is seeking *554 indemnification and contribution, and claiming breach of warranty, fraud, breach of contract, breach of covenant of good faith, and breach of fiduciary duties. Sipa also anticipates that St. Martin’s will sue Sipa, and therefore seeks a declaratory judgment as to the rights and obligations between itself and St. Martin’s Press. Thereafter, on October 29, 1998, Sipa filed its answer in the Texas action, but did not there allege counterclaims against Star-Telegram.
St. Martin’s Press served its answer herein on or about November 20, 1998. Star-Telegram, instead of answering, has moved to dismiss the action for lack of personal jurisdiction, pursuant to CPLR 3211 (a) (8) or, in the alternative, pursuant to CPLR 327 (a), to dismiss the action on the ground of forum non conveniens. In the alternative, Star-Telegram requests a stay pending resolution of the Texas action, pursuant to CPLR 327 (a).
Jurisdiction Under CPLR 302 (a)
When faced with a challenge to the court’s ability to hear a cause, the ultimate burden is upon the party asserting jurisdiction. (Roldan v Dexter Folder Co., 178 AD2d 589, 590 [2d Dept 1991]; Spectra Prods. v Indian Riv. Citrus Specialties, 144 AD2d 832, 833 [3d Dept 1988]; Basquiat v Kemper Snowboards, 1997 WL 527891, 1997 US Dist LEXIS 12653 [US Dist Ct, SD NY, Aug. 25, 1997, Preska, J.].) However, to defeat the motion to dismiss, plaintiff need only make a prima facie showing that jurisdiction exists. (Hoffritz for Cutlery v Amajac, Ltd., 763 F2d 55, 57 [2d Cir 1985].) Sipa contends that under New York’s long-arm statute, CPLR 302 (a), jurisdiction is independently obtainable under each of that subdivision’s first three paragraphs. The statute provides, in pertinent part:
“§ 302. Personal jurisdiction by acts of non-domiciliaries
“(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
“1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
“2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
“3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
*555 “(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
“(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce”. (CPLR 302 [a].)
I. Long-Arm Jurisdiction — The Contract
Sipa alleges that by actively soliciting it over the telephone to market the photos in New York and entering into a contract with it to market the photos, and by subsequently transmitting the AJ photos from Texas to it in New York, Star-Telegram’s actions come within the contemplation of the “contracts anywhere to supply goods * * * in the state” language in subdivision (a) (1).
In support of this contention, Sipa relies on a number of State and Federal court cases, beginning with the Court of Appeals decision in Parke-Bernet Galleries v Franklyn (26 NY2d 13 [1970]). In Parke-Bernet, an out-of-State bidder for art being auctioned in a Manhattan gallery was found to be doing business within the State because of his maintenance of an open telephone line during the auction, as well as his reliance upon a gallery agent physically present at the auction. More analogous to the facts here is the case of Greenky v Irving Music (1981 WL 1370, 1981 US Dist LEXIS 13432 [US Dist Ct, SD NY, July 13, 1981, Goettel, J.]), where a songwriter who assigned his performance rights in a song to a music licensing company, which then licensed the song to the media here, was found to have contracted to deliver goods or services in New York. Similarly, in Meyer v Sharron (1986 WL 8311, 1986 US Dist LEXIS 22320, 1986 Copyright L Rep [CCH] |f 25,967 [US Dist Ct, SD NY, July 24, 1986, Griesa, J.]), the assignment of public performance rights to ASCAP was found to be a contract to supply goods or services in this State.
Sipa also points to Lipton v The Nature Co. (781 F Supp 1032 [SD NY 1992]). In Lipton a California licensor sold plaintiffs copyrighted material to The Nature Company, which then sold it here. When sued by Lipton in New York, the District Court found that both the licensor and the merchandiser had contracted to supply goods and services in New York and they were both subject to jurisdiction under CPLR 302 (a) (1), (2) and (3), since, whether seen as the copyright tort or as a contract of sale, the licensor certainly should have anticipated consequences in New York.
*556 While this is not a pure copyright action, it derives from one inasmuch as Sipa pleads Star-Telegram’s infringement of Texas Hot Looks, Inc.’s copyright as a given and sues for the consequential damages it incurred in unknowingly contracting to further the Star-Telegram infringement. Because, upon these facts, Texas Hot Looks, Inc. could certainly sue both Sipa and Star-Telegram in New York’s courts, or a Federal District Court located here, the court finds that jurisdiction for Sipa’s lawsuit lies under CPLR 302 (a) (1), since the delivery of the AJ photos was an affirmative act by Star-Telegram.
II. In-State Long-Arm Jurisdiction For Torts
In support of jurisdiction under subdivision (a) (2), Sipa again relies on Lipton and several other Federal copyright decisions, because <£[c]opyright infringement is a commercial tort that is ‘deemed to take place at the point of consumer purchase.’ ” (Lipton v The Nature Co., supra, 781 F Supp, at 1035.) Since Sipa’s sales of the right to use the AJ photos occurred in New York, Star-Telegram’s tort against Hot Looks occurred here. By extension, therefore, Star-Telegram’s fraud upon Sipa occurred here, too. (See, Cordon Holding B.V. v Northwest Publ. Corp., 1998 WL 867388, 2, 1998 US Dist LEXIS 19425, *5 [US Dist Ct, SD NY, Dec. 14, 1998, Schwartz, J.] [“offering even one copy of an offending work for sale in New York constitutes tortious conduct sufficient to trigger long-arm jurisdiction under N.Y. C.P.L.R. 302(a)(2)” (citation omitted)]; Linzer v EMI Blackwood Music, 904 F Supp 207, 214 [SD NY 1995] [nondomiciliary who sold here through agents is subject to long-arm jurisdiction]; BBC Enters. v Gold Coast Tape Distrib., 1991 WL 84543, 1991 US Dist LEXIS 6360 [US Dist Ct, SD NY, May 14, 1991, Haight, J.] [Florida defendant’s sales of British licensing rights to New York resident satisfies CPLR 302 (a) (2)].)
While Sipa’s claim is one step removed from the actual infringment, predicated as it is upon Star-Telegram’s copyright tort, it makes strict legal sense. The copyright tort was nothing more than the open and notorious use of another’s work without permission. By sending Sipa the photographs and telephonically inducing Sipa to actually put the infringement into effect here, Star-Telegram could be found by a jury to have committed fraud upon Sipa in New York. Accordingly, long-arm jurisdiction lies under CPLR 302 (a) (2).
*557 III. Out-Of-State Long-Arm Jurisdiction For Torts
Also looking to Lipton {supra), Sipa alleges that, alternatively to subdivision (a) (2), jurisdiction under CPLR 302 (a) (3) “is triggered when a non-domiciliary fraudulently represents to a New York domiciliary that it is authorized to reproduce, distribute or sell infringing copies in New York.” This is so because Star-Telegram regularly solicits business in New York or derives substantial revenue from services performed in New York on its behalf {see, subd [a] [3] [i]), and Star-Telegram should reasonably have expected its infringement to have consequences in New York and it derives substantial revenue from interstate commerce {see, subd [a] [3] [ii]).
To support these asserted facts, Sipa shows that, after Star-Telegram was purchased by Knight Ridder from the Wait Disney Company in 1997 as part of a $1.65 billion acquisition, Knight Bidder’s 1997 Annual Report stated the percentage of advertising revenue generated by Star-Telegram as 5%, approximately $43 million of which came from New York or interstate commerce in general. Since the advertising agencies which attracted that business are located in New York, those agencies’ services meet the requirement of subdivision (a) (3) (i). And, because Star-Telegram expected Sipa to make sales to the New York media, and Star-Telegram derives substantial revenue from interstate commerce, subdivision (a) (3) (ii) is also satisfied.
Star-Telegram replies that “the center of gravity of the case is in Texas” and “[t]here is no apparent reason, other than tactical advantage, that plaintiff did not cross-claim against these defendants in the Texas action.” Labeling Sipa’s actions as “artful manipulation of law and fact”, Star-Telegram asks the court to “recognize the transparency of plaintiff’s efforts” and either dismiss this case for lack of jurisdiction “or, in the alternative, stay these proceedings on the ground of forum non conveniens pending the final outcome of the Texas proceeding.” (Emphasis in original.) While never stating as much, Star-Telegram implies that Sipa has engaged in fraudulent joinder so as to avoid Federal court diversity jurisdiction. However, to show that naming a nondiverse defendant (St. Martin’s Press) is a fraudulent joinder to defeat Federal jurisdiction, a defendant must show by clear and convincing evidence, either that there has been outright fraud in a plaintiff's pleadings, or that there is no possibility, based upon the pleadings, that plaintiff can state a cause of action against the nondiverse defendant in State court. (Cf, Pampillonia v RJR Nabisco, 138 F3d 459, 461 *558 [2d Cir 1998].) This Star-Telegram cannot do. In any event, since Star-Telegram did not attempt to remove this case to Federal court and assert the issue there, this court need not venture further into otherwise irrelevant Federal procedural matters.
Star-Telegram also argues that CPLR 302 (a) (2) and (3) are simply irrelevant inasmuch as “the only tort arguably presented in plaintiffs complaint is that of fraud in the performance of a contract. It is well settled in New York, however, that if a fraud claim is simply a reiteration of the contract claim, then the fraud claim must be dismissed.” In this vein, Star-Telegram criticizes Sipa’s reliance on copyright cases, which are statutory torts with special venue provisions of their own. (See, 28 USC § 1400 [a] [venue lies where defendant or “his agent resides or may be found”]; Cordon Holding B.V. v Northwest Publ. Corp., supra, 1998 WL 867388, 2, 1998 US Dist LEXIS 19425 [even offering one copy for sale in New York is enough to trigger long-arm jurisdiction].)
Star-Telegram appears to want it both ways, however. If, as Star-Telegram alleges, “the center of gravity of the case is in Texas”, that must be because Star-Telegram correctly recognizes the copyright infringement as the central wrong, the consequences of which are indeed felt in New York. Moreover, an allegation of fraud (in the inducement) may be based on an act or conduct by a defendant that is intended to deceive the plaintiff. Thus, the “[c]oncealment of facts one has an obligation to disclose with the intent to fraud has the same legal effect as an affirmative misrepresentation.” (Banco Nacional Ultramarino v Chan, 169 Misc 2d 182, 190 [Sup Ct, NY County 1996].) And, there would seem to be a difference between a fraudulent inducement to enter into a contract as opposed to the fraudulent performance of a contract, as Star-Telegram alleges. Hence, over and above Star-Telegram’s copyright infringement, and irrespective of its breach of contract claims, Sipa has sufficiently alleged a tort to survive the preliminary requirement of a tort contained in either subdivision (a) (2) or (3).
Nor is Lipton (supra) inapplicable inasmuch as the court there carefully noted that the nondomiciliary licensor, even though not in a licensing relationship with the seller of the infringing works, was “certainly responsible for and benefitting from the sale” in New York. (Lipton v The Nature Co., 781 F Supp, at 1036; see also, Basquiat v Kemper Snowboards, supra, 1997 WL 527891, 4, 1997 US Dist LEXIS 12653 [physical presence of tortfeasor in New York not required].)
*559 There is ample precedent for finding jurisdiction under New York’s long-arm statute. In Kernan v Kurz-Hastings, Inc. (175 F3d 236 [2d Cir 1999]), the Second Circuit upheld long-arm jurisdiction over a Japanese manufacturer whose machine was sold to a New York plaintiff by a Pennsylvania company. The manufacturer in that case was not licensed or registered to do business here, and had no history of ever directly transacting or soliciting business in New York. Nonetheless, citing two First Department cases, the Circuit Court found the manufacturer’s oral agreement with the Pennsylvania distributor, who it knew operated on a nationwide basis, made it “reasonably forseeable” that the manufacturer’s machines would end up in New York. (Kernan v Kurz-Hastings, Inc., at 242, citing Adams v Bodum Inc., 208 AD2d 450, 451 [1st Dept 1994] [manufacturer’s exclusive distributorship with codefendant distributor, covering entire country, made purchases in New York a reasonable expectation]; Kappas v T.W. Kutter, Inc., 192 AD2d 402 [1st Dept 1993] [“activities of a representative of a non-domiciliary in New York will be attributed to the non-domiciliary for the purpose of long-arm jurisdiction”]; see also, Thompson v Nishimoto Trading Co., 180 Misc 2d 466 [Sup Ct, ICings County 1999] [Japanese manufacturer with no other contacts to New York but nationwide distributorship agreement with codefendant is amenable to long-arm jurisdiction for products liability]; Jones v LaBofa A/S, 1997 WL 642468, 1997 US Dist LEXIS 16147 [US Dist Ct, ND NY, Oct. 15, 1997, Pooler, J.].)
In conclusion, while there are no cases with precisely the same fact situation as here, certainly, if Texas Hot Looks had brought its action in New York, Star-Telegram would be amenable to suit here. Defendant can state no distinction which bars a lawsuit, arising from the same set of facts, brought here by its own New York agent.
Due Process
There remains the question of whether, despite a jurisdictional basis under the New York statute, holding Star-Telegram here is permissible under the Due Process Clause, as the Supreme Court has interpreted it in International Shoe Co. v Washington (326 US 310 [1945]), and refined our understanding through World-Wide Volkswagen Corp. v Woodson (444 US 286 [1980]) and Asahi Metal Indus. Co. v Superior Ct. (480 US 102 [1987]).
As those cases teach, a foreign defendant hailed into court in New York must have sufficient minimum contacts with *560 New York so as to satisfy the Due Process Clause’s requirement of fundamental fairness. Moreover, the assertion of jurisdiction must be reasonable in terms of the foreseeability that the defendant’s actions would have repercussions here. The foreseeability aspect has' already been discussed above; Star-Telegram could and should easily have foreseen that a contract with Sipa to syndicate the AJ photos to the New York media would have repercussions in this State. The question of minimum contacts is somewhat more difficult, inasmuch as this is a preanswer motion and there has been no discovery. Accordingly, Sipa has tried to overcome this by showing Star-Telegram’s national presence, its use of New York advertising agencies, and its income derived thereby. While Star-Telegram complains of Sipa’s method of collecting some of this data (a paralegal posing as a graduate student researching “newspapers” e-mailed Star-Telegram’s vice-president for advertising), certainly all this information would be revealed were this court to hold the motion in abeyance and permit discovery before deciding the issue. Moreover, the inquiry, as enunciated by the Supreme Court in World-Wide Volkswagen (supra), does not even require so much for “if the sale of a product of a manufacturer * * * is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.” (World-Wide Volkswagen Corp. v Woodson, 444 US, at 297.) Under this test, Star-Telegram’s repeated employment of Sipa to syndicate photographs makes reasonable the assertion of jurisdiction.
Accordingly, whether analyzed from the point of view of the specific sales contract to supply the AJ photos to Sipa here in New York (CPLR 302 [a] [1]), or the copyright infringement itself (with its collateral consequences to Sipa), which tort is deemed to happen where Star-Telegram’s agent (Sipa) sold them (CPLR 302 [a] [2]), or the alleged representations on the telephone from Texas that Sipa could syndicate the photos freely (CPLR 302 [a] [3] [i] or [ii]), Star-Telegram is subject to long-arm jurisdiction in New York.
Forum Non Conveniens
Star-Telegram urges this court to dismiss or stay this action until completion of the Texas Hot Looks action, alleging *561 that Sipa’s contentions are better adjudicated in Federal court in the Texas action. “To prevail on a motion to dismiss based on forum non conveniens, a defendant must demonstrate that an adequate alternative forum exists and that, considering the relevant private and public interest factors set forth in [Gulf Oil Corp. u] Gilbert, 330 U.S. [501,] 508-[5]09 [1947], the balance of convenience tilts strongly in favor of trial in the foreign forum.” (Maganlal & Co. v M.G. Chem. Co., 942 F2d 164, 167 [2d Cir 1991].) But the Texas Hot Looks litigation, at least as it relates to Star-Telegram and St. Martin’s, has been concluded without any counterclaims being asserted against it by Sipa. Thus, there is hardly a convincing case to be made that Texas is an adequate forum. Moreover, all of Sipa’s royalty records are here, most of the customers it sold to are New York media, and, thus, most of the material witnesses are here, as well. Star-Telegram has only two or three witnesses in Texas, and getting them here is no great inconvenience. Accordingly, the “balance of convenience” is plainly with retaining the matter here and proceeding. No stay of the action until the conclusion of the Texas litigation is necessary, since Star-Telegram has already settled out of that action. For all of the foregoing reasons, it is ordered that Star-Telegram’s motion to dismiss for lack of jurisdiction or, in the alternative, to dismiss or stay this action on the grounds of forum non conveniens, is denied.

 (Complaint 1; but see, Seitz v Sipa Press, 1991 WL 100383, 1991 US Dist LEXIS 12645 [US Dist Ct, D DC, May 31, 1991, Green, J.] [reciting that Sipa Press, Inc. is a Delaware corporation and Sipa, Inc. is the New York corporation].) The parties here do not dispute Sipa’s State of incorporation.