**Helene OBOLENSKY and Helene Obolensky Enterprises, Inc. Plaintiffs,**

v.

**G.P. PUTNAM'S SONS, Defendant.**

**No. 83 Civ. 3943 (EW).**

United States District Court, S.D. New York.

March 3, 1986.

---

(David Otis Fuller, Jr., of counsel), for plaintiffs.

Parker, Duryea, Zunnino, Malone & Carter, New York City (William Lee Kinnally, Jr., Aaron Shmulewitz, of counsel), for defendant.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiffs Helene Obolensky and Helene Obolensky Enterprises, Inc. sue defendant publisher, G.P. Putnam's Sons ("Putnam's"), for damages on numerous causes of action. The factual background to the complaint centers about a book entitled *Nureyev*, by Clive Barnes ("the Book"), the copyright to which is owned by plaintiffs, and for whose publication plaintiffs entered into negotiations with Putnam's in May and June 1982. These negotiations terminated in early July 1982 without a signed agreement between the parties, and thereafter plaintiffs published and distributed the Book independently. Subsequent to the breakdown in negotiations, the trade publications *Books in Print* and *Forthcoming Books*, produced and distributed by R.R. Bowker Co., listed Putnam's as the publisher of the Book.

Plaintiffs allege, under theories of breach of contract, negligence, misappropriation, tortious interference with contract, copyright violation, and misidentification of goods in interstate commerce, that they were damaged by the acts of the defendant. The case was tried to a jury, the receipt of evidence requiring four trial days. The Court reserved decision on defendant's motions for a directed verdict at the close of the plaintiffs' case and again at the close of the entire case, and those motions are now disposed of as follows.

Plaintiff Helene Obolensky is a citizen of New York; plaintiff Helene Obolensky Enterprises, Inc., and defendant G.P. Putnam's Sons are New York corporations. Plaintiffs allege federal subject matter jurisdiction over the claims arising under the copyright and trademark statutes;[1] de-

Kreindler & Kreindler, New York City; (Donald D. Goldberg, Paul S. Edelman, of counsel), Koritz & Fuller, New York City;

---

1. Third Amended Complaint, ¶ 6.

fendant disputes the existence of federal jurisdiction. The remaining thirteen causes of action in plaintiffs' third amended complaint are state law claims, over which plaintiffs allege this Court has pendent jurisdiction.

The first of the federal claims asserted by plaintiffs is a claim for interference with plaintiffs' right of first publication and distribution of the Book. Plaintiffs allege that the acts of defendant Putnam's after the breakdown of negotiations in July 1982, particularly in listing or causing to be listed in *Books in Print* and *Forthcoming Books* the information that Putnam's was the publisher of the Book, interfered with the rights secured to plaintiffs by the statute. While this Court is mindful of the oft-repeated admonitions of our Court of Appeals regarding the granting of directed verdicts,[2] there are nonetheless rare occasions upon which such disposition is a positive duty.[3] Upon a close study of the trial record, viewing the evidence in the light most favorable to plaintiffs, the Court is satisfied that the federal copyright claim is insufficient as a matter of law.

The undisputed factual record shows that in April 1982, plaintiffs and defendant entered into negotiations for the publication of the Book. Terms of a proposed agreement were included in a letter sent by defendant to plaintiffs on May 3, 1982, which plaintiffs contend was a binding agreement and which defendant contends was preliminary to the execution of a written contract for the distribution of the Book. The terms set forth in the May 3 letter provided that Putnam's would buy from plaintiffs finished books, which it would in turn distribute to retail bookstores and ultimate consumers.[4]

In reliance upon the May 3 letter, whether it was a binding contract or merely a preliminary agreement, both parties took steps to secure the production and distribution of the Book. With plaintiffs' knowledge and consent, Putnam's listed the Book in two of its sales catalogues and presented the Book at its sales conference held in late May 1982; in addition, and also with plaintiffs' knowledge, Putnam's registered the Book with the Library of Congress, indicating that the book would be published by Putnam's.[5]

On July 7, 1982, after what the parties agree were prolonged discussions, Putnam's notified plaintiffs in writing that the negotiations would not continue, and that it would not publish the Book. The failure of negotiations resulted, at least in part, from plaintiffs' insistence on the inclusion of a force majeure clause in the final contract; a provision which, the undisputed evidence shows, Putnam's refused to grant, consistent with a long-standing policy of not including such a provision in its contracts with suppliers of books.[6] Immediately upon termination of negotiations, Putnam's notified its sales force to stop selling the Book, and directly notified five of its largest customers (wholesale book distributors and large retail chains) that the Book had been cancelled. In addition, defendant cancelled outstanding orders for 3,701 copies of the Book, which it had previously received with the plaintiffs' permission, and notified each of the ordering customers, by invoice, of the cancellation of *Nureyev* as a Putnam's product.[7]

---

**2.** *See, e.g., Mattivi v. South African Marine Corp.,* 618 F.2d 163, 166 n. 2 (2d Cir.1980); *Lindeman v. Textron, Inc.,* 229 F.2d 273, 276 (2d Cir.1956); *Fratta v. Grace Line, Inc.,* 139 F.2d 743, 744 (2d Cir.1943).

**3.** "The easy but timid way out for a trial judge is to leave all cases tried to a jury for jury determination, but in so doing he fails in his duty to take a case from the jury when the evidence would not warrant a verdict by it." *Wilkerson v. McCarthy,* 336 U.S. 53, 65, 69 S.Ct. 413, 419, 93 L.Ed. 497 (1949) (Frankfurter, J., concurring).

**4.** *See* Plaintiffs' Exhibit 70 (letter from Diane Reverand to Helene Obolensky, dated May 3, 1982).

**5.** Pre-Trial Order, ¶ 2.

**6.** Pre-Trial Order, ¶¶ 4–5.

**7.** *See* Pre-Trial Order, ¶ 6; Trial Transcript, at 688 (testimony of Joseph McLaughlin) [hereinafter cited as "Tr." ].

After the termination of negotiations in July, plaintiffs proceeded with plans to publish and distribute the Book independently. Plaintiffs secured financing for this endeavor and published the Book; distribution began in late November 1982, roughly five months later. Plaintiffs did not notify defendant that plaintiffs were publishing the book independently until December 1982, after the books were in distribution.[8]

It is undisputed that the September 1982 issue of *Forthcoming Books* and the 1982–83 annual issue of *Books in Print*, both published in the hiatus between the cancellation of the parties' negotiations and the plaintiffs' initial distribution of the finished books, listed the Book as a Putnam's publication. It is also stipulated that the November 1982 and January 1983 issues of *Forthcoming Books* listed the book as "... cancelled. Putnam's."[9] No evidence was presented upon the trial showing the source of the information which resulted in the initial entries in *Books in Print* and *Forthcoming Books* that listed Putnam's as the publisher of the Book.

■ Upon this record, plaintiffs maintain that they have stated a claim for infringement of their right of distribution of the copyrighted book. Section 106 of the Copyright Act of 1976 provides that "the owner of copyright ... has the exclusive rights ... to distribute copies ... of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending."[10] Section 501 of the Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner ... is an infringer of the copyright."[11] It

is not disputed that defendant never copied the Book, in whole or in part, never sold any copies of the Book, and never had possession, custody, or control of any copies of the Book. Plaintiffs, however, contend that the listing of the defendant as publisher of the Book in *Books in Print* and *Forthcoming Books*, and the subsequent notification by the defendant to the same publications that the Book had been cancelled, made it "an impossible task to disseminate the Book."[12]

This claim is without legal substance. While there is evidence in the record of refusals by bookstores to purchase the Book from plaintiffs, apparently in reliance upon the erroneous entry in *Books in Print*,[13] plaintiffs' own trial witnesses testified that copies of the Book were on sale both in this city and in Cleveland, Ohio,[14] and that promotional events were held by both the Book's author, Clive Barnes, and the Book's subject, Rudolf Nureyev, at which events copies of the book were autographed and sold.[15] It is clear from the record that plaintiffs did distribute the Book, and, as already noted, equally undisputed that the defendant neither copied the Book nor sold any copies of the Book.

The courts have held that there is no violation of the right to vend copyrighted works under the predecessor federal copyright statute where the defendant offers to sell copyrighted materials but does not consummate a sale;[16] equally, there is no infringement of the vending right where there is copying, but no sale of the material copied.[17] The present case poses a situation in which there was neither copying nor a sale, and plaintiffs have failed to state a

---

8. Pre-Trial Order, ¶ 8.

9. Pre-Trial Order, ¶ 10.

10. 17 U.S.C. § 106(3).

11. 17 U.S.C. § 501(a).

12. Tr. at 712 (argument of counsel).

13. *See* Tr. at 490–501 (testimony of Jane Oghidanian).

14. *See* Tr. at 494, 497–99 (testimony of Jane Oghidanian); Tr. at 619 (testimony of Helen Moise).

15. *See* Tr. at 619 (testimony of Helen Moise); Tr. at 201 (testimony of Helene Obolensky).

16. *Greenbie v. Noble,* 151 F.Supp. 45, 63–64 (S.D.N.Y.1957).

17. *Encyclopaedia Britannica Educational Corp. v. Crooks,* 558 F.Supp. 1247, 1253 (W.D.N.Y. 1983).

cognizable claim for the violation of their right to distribute the Book. The essence of plaintiffs' claim is that they sold fewer of the books than they would have but for the entries in *Books in Print* and *Forthcoming Books;* even if this is due to incidental effects of defendant's activity, it is not the result of an infringement of plaintiffs' copyright within the meaning of the statute. The motion by defendant for directed verdict on the first cause of action in plaintiffs' third amended complaint is granted.

■ Plaintiffs' second federal cause of action alleges a violation of section 43(a) of the Lanham Act, which prohibits false designations of origin of goods in interstate commerce. The statute provides that:

> Any person who shall affix, apply, or annex, or use in connection with any goods or services ... a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, *and shall cause such goods or services to enter into commerce* ... shall be liable to a civil action ...[18]

Plaintiffs allege that Putnam's listed the Book in *Books in Print* and *Forthcoming Books* as its own publication after it had terminated negotiations, and in so doing misidentified the origin of the Book to plaintiffs' detriment.

Putnam's denies that it provided to R.R. Bowker Co., the publisher of *Books in Print* and *Forthcoming Books,* the information that the Book was a Putnam's product. There is no evidence in the trial record to support the allegation, but even if it were conceded that the listing was caused by defendant, plaintiffs' claim would fail. The statute requires that the defendant not only apply a false designation of origin, but also cause the precise goods in question to enter into commerce. This element of the action is "jurisdictional in nature" and "not to be taken lightly."[19] It is undisputed that Putnam's never possessed or distributed any copies of the Book, and that Putnam's caused no copies of the Book to enter interstate commerce. Accordingly, plaintiffs' Lanham Act claim fails as a matter of law; defendant's motion for a directed verdict on the thirteenth cause of action in plaintiffs' third amended complaint is granted.

■ The dismissal of plaintiffs' two federal causes of action raises a serious issue as to whether this Court should retain jurisdiction over plaintiffs' remaining claims, which are matters of state common law. As previously noted, all the parties are citizens of or corporations resident in New York, and there is and can be no allegation that this Court has jurisdiction over plaintiffs' remaining causes of action by reason of diversity of citizenship. The existence vel non of subject matter jurisdiction is a question which the Court has a duty to raise sua sponte regardless of whether or not it is addressed by the parties.[20] Where, as here, the Court is alleged to have pendent jurisdiction over state law causes of action by reason of related federal claims, the exercise of pendent jurisdiction after dismissal of the federal claims is a matter addressed to the discretion of the court.[21]

■ While the Court is mindful of the fact that four trial days were consumed in the conduct of the trial, and that dismissal

**18.** 15 U.S.C. § 1125(a) (emphasis added).

**19.** *Blazon Inc. v. DeLuxe Game Corp.,* 268 F.Supp. 416 (S.D.N.Y.1965); *Miles Lab, Inc. v. Frolich,* 195 F.Supp. 256, 257–58 (S.D.Cal.), *aff'd,* 296 F.2d 740 (9th Cir.1961), *cert. denied,* 369 U.S. 865, 82 S.Ct. 1030, 8 L.Ed.2d 84 (1962).

**20.** *Clark v. Paul Gray Inc.,* 306 U.S. 583, 588, 59 S.Ct. 744, 748, 83 L.Ed. 1001 (1939); *Mansfield, Coldwater & Lake Michigan Ry. v. Swan,* 111 U.S. 379, 383, 4 S.Ct. 510, 512, 28 L.Ed. 462 (1884); *Air Cargo, Inc. v. Local Union 851,* 733 F.2d 241, 247 n. 5 (2d Cir.1984); *Prakash v. American University,* 727 F.2d 1174, 1179 n. 34 (2d Cir.1984); *Bernstein v. Universal Pictures, Inc.,* 517 F.2d 976 (2d Cir.1975). *See* Fed.R. Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

**21.** *United Mine Workers v. Gibbs,* 383 U.S. 715, 727, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

of the pendent claims results in a waste of that judicial effort, it is of the view that with the tremendous increase of litigation in the federal courts, involving cases that properly place demands upon its limited judicial resources, cases that do not belong here should not be tried here. This is especially true where a litigant has asserted unmerited federal claims in a purposeful effort to obtain federal jurisdiction. Such efforts should be discouraged. This case from its inception presented largely state common law claims, and the action should have been commenced in that forum. The expressed preference of Putnam's counsel that the Court dispose of the state claims on the motion for a directed verdict or, in the event of denial of the motion, submit them to the jury is understandable, but other considerations are pertinent. To allow the pendent claims to be decided here would simply serve to encourage a practice which imposes a substantial burden on the limited resources of the federal courts. As the Supreme Court has said, "recognition of a federal court's wide latitude to decide ancillary questions of state law does not imply that it must tolerate a litigant's effort to impose upon it what is in effect only a state law case";[22] and, as our Court of Appeals has noted, "[e]ven where substantial time and resources have been expended in the trial of an action in federal court, pendent state claims must be dismissed if it later is determined that there never existed a federal claim sufficient to invoke the jurisdiction of the federal court."[23] Plaintiffs' federal claims having been exposed as meritless upon the trial, dismissal of the pendent claims is fully warranted.[24] Accordingly, defendant's motion for a directed verdict on plaintiffs' federal claims is granted; plaintiffs' remaining claims are dismissed without prejudice for lack of federal subject matter jurisdiction.

So ordered.

---

**22.** *United Mine Workers v. Gibbs,* 383 U.S. 715, 727, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Diamond v. Am-Law Publishing,* 745 F.2d 142, 148 (2d Cir.1984).

**23.** *Crane Co. v. American Standard, Inc.,* 603 F.2d 244, 254 (2d Cir.1979).

**24.** *United Mine Workers v. Gibbs,* 383 U.S. 715, 727, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Dunton v. County of Suffolk,* 729 F.2d 903, 910–11 (2d Cir.1984); *Crane Co. v. American Standard, Inc.,* 603 F.2d 244, 254 (2d Cir.1979). *See also Morpurgo v. Board of Higher Education,* 423 F.Supp. 704, 718 (S.D.N.Y.1976).