**SUN TRADING DISTRIBUTING CO., INC. d/b/a Landmark Records and Muse Records, a Division of Blanchris, Inc., Plaintiff,**

**v.**

**EVIDENCE MUSIC, INC., d/b/a Evidence Records, and Kenwood Electronics Corp., Defendants.**

**No. 96 Civ. 4997(DC).**

United States District Court, S.D. New York.

Oct. 14, 1997.

Mitchel S. Sundel, New York City, for plaintiff.

Christopher R. Whent, New York City, for defendant Evidence Music, Inc. d/b/a Evidence Records.

Pillsbury Madison & Sutro LLP by Raymond L. Sweigart, New York City, for defendant Kenwood Electronics Corp. and Kenwood USA Corporation.

## MEMORANDUM DECISION

CHIN, District Judge.

Plaintiff brings this action pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and New York State common law, seeking damages and injunctive relief for defendants' alleged unfair competition arising out of their exploitation of sound recordings by three jazz artists. Defendants move to dismiss on the ground that plaintiff fails to state a claim upon which relief can be granted, or, in the alternative, for summary judgment. Defendants' motion for summary judgment is granted, for no reasonable trier of fact could find, on the record before the Court, actual consumer confusion or the likelihood of confusion. Hence, plaintiff's Lanham Act claims fail as a matter of law. The

Court declines to exercise supplemental jurisdiction over plaintiff's state law claims.

## BACKGROUND

Plaintiff Sun Trading Distributing Co. ("Sun Trading") does business as Muse Records and Landmark Records. Both companies are in the business of producing, recording, manufacturing, and selling sound recordings, internationally and domestically. Defendant Evidence Music, Inc. ("Evidence") is in the business of producing, acquiring, and licensing principally jazz and blues recordings for distribution and sale as phonograph records and tapes. Sun Trading also names as a defendant Kenwood Electronics Corp. ("Kenwood"), a nonexistent business entity. Kenwood concedes that the intended defendant in this matter was likely Kenwood USA, but maintains that Kenwood USA is entirely unconnected with any of the events that are the subject of this lawsuit.

At issue in this case are the recordings of three professional jazz artists—John Hicks, Edward "Sonny" Stitt, and Antoine Roney. Hicks is an active professional musician. On November 1, 1994, Hicks entered into a one-year exclusive recording agreement with Landmark Records, to expire on October 31, 1995 (the "Hicks Agreement"). During the term of this exclusive agreement, and in violation thereof, Hicks recorded an album for Evidence with another musician named Ray Drummond. Evidence contends that it was unaware of the Hicks Agreement at the time, but that when it learned of the agreement, it refrained from releasing the record. Sun Trading disputes that Evidence was ignorant of the Hicks Agreement when it entered into its own recording deal with Hicks. Sun Trading claims that the unauthorized Hicks recording belongs to Landmark and that Evidence is in possession of this recording without plaintiff's permission. It is undisputed, however, that the Hicks recording is not currently, nor has it ever been, in commerce.

Sonny Stitt was a professional musician until the time of his death in 1982. Stitt entered into a two-year exclusive recording agreement with Muse on May 1, 1979, to expire on April 30, 1981 (the "Stitt Agreement"). A company called Trio Records/Trio–Kenwood Corp. ("Trio–Kenwood") recorded Stitt during the term of the exclusive agreement. The head of Trio–Kenwood later started another company called Art Union Records, which obtained the rights to the unauthorized Stitt recording. Art Union Records eventually licensed the recording to Evidence, roughly ten years after it was made. Evidence, in turn, distributed the recording. Sun Trading alleges that this unauthorized recording, entitled "Deuces Wild," is Muse's property because it was recorded while the Stitt Agreement was in effect, and that Evidence distributed this recording without Muse's knowledge or permission and improperly gave publishing credit to a company named Birdseed Music instead of to Muse. Such action, Sun Trading contends, falsely designates the origin of the Stitt recording, thereby creating consumer confusion.

Like Hicks, Antoine Roney is also an active professional musician. Roney entered into a two-year exclusive recording agreement with Muse on November 1, 1991, to expire on October 31, 1993 (the "Roney Agreement"). The Roney Agreement specifically permitted Roney to make recordings for other companies during this period as long as he performed only as a "sideman" and not as a lead musician. During the term of the Roney Agreement, a company called Alfa Music made a recording of Roney in which he performed as a sideman, consistent with the Roney Agreement. Sun Trading complains, however, that when Evidence obtained the rights to this recording, it repackaged the recording for U.S. distribution in a manner that depicted Roney as a lead musician. Such action, plaintiff contends, deceives and confuses consumers by leading them to believe that Roney performs as a lead musician on an album on which he performs solely as a sideman.

Plaintiff maintains that the names and likenesses of Hicks, Stitt, and Roney are properties uniquely associated with Muse and Landmark; therefore, Evidence's conduct with respect to the Hicks, Stitt, and Roney recordings trades unfairly upon Landmark's and Muse's goodwill in violation of § 43(a) of

the Lanham Act. In addition, plaintiff asserts claims of tortious interference with contract, misappropriation, and unfair competition under New York law. Plaintiff seeks money damages, injunctive relief, and costs.

Defendants move to dismiss the complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. Sun Trading opposes the motion and cross-moves for leave to amend the complaint to include the proper Kenwood entities as defendants in the action, which it believes to be Kenwood Corporation of Tokyo, Japan ("Kenwood Japan") and Art Union Records.

## DISCUSSION

### A. *Defendant's Motion for Summary Judgment*

Because both parties had a reasonable opportunity to conduct discovery prior to the filing of this motion and have submitted matters outside the pleadings with their motion papers, the Court treats this motion as one for summary judgment. *See* Fed.R.Civ.P. 12(b).

### 1. *Standards for Summary Judgment*

The standards applicable to motions for summary judgment are well-settled. A court may grant summary judgment only where there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). Accordingly, the court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is inappropriate

if, resolving all ambiguities and drawing all inferences against the moving party, *id.* at 255, 106 S.Ct. at 2513 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)), there exists a dispute about a material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

Once the moving party meets its initial burden of production, the burden shifts to the nonmoving party to demonstrate that there exist genuine issues of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). To defeat a motion for summary judgment, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. at 1356. There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. As the Supreme Court stated in *Anderson*, "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511 (citations omitted). With these standards in mind, the Court turns to the defendants' motion for summary judgment.

### 2. *Lanham Act Claims*

Plaintiff's first cause of action alleges a violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which prohibits false designations of origin of goods in interstate commerce.[1] The main goal of § 43(a) of the Lanham Act is to prevent consumer confusion regarding the source of the goods or services produced. *Thompson Medical Co. v. Pfizer, Inc.*, 753 F.2d 208, 215 (2d Cir.

---

**1.** The statute provides in relevant part:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

1985). To state a claim under this section of the Lanham Act, plaintiff must allege that (1) goods or services are involved, (2) interstate commerce is affected, and (3) there is a false designation of origin or a false description or representation with respect to those goods or services in commerce. *CBS Inc. v. Springboard Int'l Records,* 429 F.Supp. 563, 566 (S.D.N.Y.1976).

Elaborating on the third prong of the above test, the Second Circuit has stated that § 43(a) of the Lanham Act contemplates two main causes of action: "product infringement," which refers to false designation of origin or source, and "false advertising," which covers false description or representation. *Resource Developers, Inc. v. Statue of Liberty–Ellis Island Found., Inc.,* 926 F.2d 134, 139 (2d Cir.1991). False advertising is simply a "fraudulent representation[ ] that goods marketed have 'ingredients or qualities' that they, in fact, do not have but that the goods of a competitor do have." *PPX Enters., Inc. v. Audiofidelity Enters., Inc.,* 818 F.2d 266, 272 (2d Cir.1987). To establish a false advertising claim under § 43(a), the plaintiff must demonstrate (1) the falsity of the challenged statement, either by proving that the statement is literally false as a factual matter, or even though literally true, it is likely to deceive or confuse customers, and (2) that the defendant "misrepresented an 'inherent quality or characteristic' of the product." *National Basketball Ass'n v. Motorola, Inc.,* 105 F.3d 841, 855 (2d Cir.1997) (quoting *National Ass'n of Pharm. Mfrs. v. Ayerst Labs.,* 850 F.2d 904, 917 (2d Cir.1988) and *Vidal Sassoon, Inc. v. Bristol–Myers Co.,* 661 F.2d 272, 278 (2d Cir.1981)).

Product infringement, on the other hand, can occur in either of two contexts. The first context is known as "passing off" or "palming off," which occurs when the wrongdoer attempts to sell its product with a false designation that suggests the product originated from the plaintiff. *See Waldman Pub. Corp. v. Landoll, Inc.,* 43 F.3d 775, 780 (2d Cir.1994). "Reverse passing off" or "reverse palming off," in contrast, occurs when the wrongdoer eliminates the designation of source from the plaintiff's product and sells that product under its own name. *Lipton v.*

*Nature Co.,* 71 F.3d 464, 473 (2d Cir.1995); *accord Waldman,* 43 F.3d at 780. "Reverse passing off" harms the originator of the misidentified product because he is "involuntarily deprived of the advertising value of [his] name and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory product." *Rosenfeld v. W.B. Saunders, Div. of Harcourt Brace Jovanovich, Inc.,* 728 F.Supp. 236, 241 (S.D.N.Y.), *aff'd,* 923 F.2d 845 (2d Cir.1990). To establish a Lanham Act violation based on "reverse passing off," the plaintiff must prove that (1) the product at issue originated with plaintiff, (2) the origin of the product was falsely designated by the defendant, (3) the false designation of origin was likely to cause consumer confusion, and (4) the plaintiff was harmed by the defendant's false designation of origin. *Lipton,* 71 F.3d at 473.

Thus, there are three possible theories under which a Lanham Act plaintiff may proceed. Common to all three theories, however, is the requirement that a plaintiff seeking injunctive or monetary relief under the Lanham Act raise a genuine issue of fact regarding the injury he has sustained or is likely to sustain due to consumer confusion generated by the defendant's actions. *See National Basketball Ass'n,* 105 F.3d at 855; *Lipton,* 71 F.3d at 473. A distinction is drawn between the extent of proof of consumer confusion required for injunctive relief and that required for recovery of money damages. *PPX,* 818 F.2d at 271. To obtain injunctive relief, a plaintiff must demonstrate a *likelihood* of deception or confusion on the part of the buying public caused by the false designation of origin or false description or representation. *Id.* While there is no precise measure of how much evidence will suffice, in general, something more than mere subjective belief that the plaintiff is injured or likely to be injured is required. *Johnson & Johnson v. Carter–Wallace, Inc.,* 631 F.2d 186, 189 (2d Cir.1980). In a case where the plaintiff seeks injunctive relief based on a misrepresentation that is literally or explicitly false, however, the court may grant such relief without reference to the impact on the buying public. *Mobius Management Sys., Inc. v. Fourth Dimension Software, Inc.,* 880

F.Supp. 1005, 1021–22 (S.D.N.Y.1994). In contrast, a plaintiff seeking money damages must establish *actual* consumer confusion or deception resulting from the defendant's alleged Lanham Act violation. *PPX,* 818 F.2d at 271.

Sun Trading makes only bare bones allegations as to how Evidence's actions with respect to the Hicks, Stitt, and Roney recordings violate the Lanham Act. The complaint does not state which, if any, of the three theories it relies upon in asserting its Lanham Act claims, nor do its papers in opposition to defendants' motion for summary judgment clarify its position. Even drawing all inferences in favor of Sun Trading, as the Court must do, Sun Trading's Lanham Act claims fail as a matter of law with respect to all three recordings.

### a. *The Hicks Recording*

█ Sun Trading argues that Evidence's recording of Hicks during the term of the exclusive Hicks Agreement without Landmark's permission or knowledge trades unfairly upon the goodwill associated with Landmark and therefore violates the Lanham Act. This portion of plaintiff's Lanham Act claim is easily disposed of, however, even without deciphering its theory of liability. Section 43(a) clearly requires that the goods or services complained of have entered into commerce. *Obolensky v. G.P. Putnam's Sons,* 628 F.Supp. 1552, 1556 (S.D.N.Y.), *aff'd,* 795 F.2d 1005 (2d Cir.1986); *Blazon, Inc. v. DeLuxe Game Corp.,* 268 F.Supp. 416, 428–29 (S.D.N.Y.1965). Here, while Evidence admits that it indeed made an unauthorized recording of Hicks during the term of the Hicks Agreement, it refrained from releasing the record when it became aware of the existence of that agreement. Plaintiff does not dispute that the unauthorized Hicks recording has not been released and is therefore not in commerce. Accordingly, plaintiff's Lanham Act claim based on the Hicks recording fails as a matter of law. *See Obolensky,* 628 F.Supp. at 1556 (in action alleging misidentification of origin of book, plaintiffs' Lanham Act claim failed as a matter of law because defendant never distributed the book and therefore never caused it to enter interstate commerce).

### b. *The Stitt Recording*

█ The theory for plaintiff's Lanham Act claim based on the Stitt recording is unclear. Sun Trading submits the affidavit of Joseph Fields, an officer of the company, stating that the unauthorized Stitt recording is the property of Muse Records and that Evidence, when it subsequently acquired the rights to this recording, improperly gave publishing credit to Birdseed Music instead of to Muse. In its brief, plaintiff merely reiterates that Evidence continues to profit from this unauthorized recording that was made more than ten years before Evidence even existed as a corporation. These statements can only be read to argue a theory of "reverse passing off": by crediting someone other than Muse for the publication of the Stitt recording "Deuces Wild," Evidence falsely designates the origin of this recording, which results in, or is likely to result in, consumer confusion.

This argument fails, however, for the facts, even construed in the light most favorable to Sun Trading, do not support a "reverse passing off" theory. First, Sun Trading offers nothing in support of its claim of ownership of the track "Deuces Wild." The only proof that plaintiff does submit is the statement of Mr. Fields that the recording truly belongs to Muse Records because Mr. Stitt recorded the composition in violation of his exclusive recording agreement. While it may be true, this assertion does not establish the first element of a "reverse passing off" claim—that the product at issue originated with plaintiff, *see Lipton,* 71 F.3d at 473, for, in fact, the recording did not originate with plaintiff. The artist who purportedly performed the recording did indeed perform the recording, and he recorded it for Trio–Kenwood, not for Sun Trading. Therefore, no reasonable trier of fact could conclude that Evidence falsely designated the origin of the Stitt recording. *See id.*

█ Second, even assuming that "Deuces Wild" originated with Muse, Sun Trading offers no proof showing that Evidence took that recording and put its own name on it in place of Muse's, which is what a "reverse passing off" claim contemplates. *See id.*

Rather, Sun Trading claims that Evidence incorrectly credits a third party, Birdseed Music, with the publishing rights on the composition "Deuces Wild." As the Second Circuit has held, however, "Copyright infringement, by itself, does not amount to a misrepresentation or false designation to establish a claim under § 43(a).... [T]here must exist some affirmative act whereby the [the defendant] falsely represented itself as the owner of the [work]." *Cognotec Servs., Ltd. v. Morgan Guar. Trust Co.*, 862 F.Supp. 45, 51 (S.D.N.Y.1994). Finally, even if Sun Trading's allegations could otherwise support a theory of "reverse passing off," Sun Trading offers absolutely no evidence of actual consumer confusion that has or will result in harm to the plaintiff, nor has it raised an issue of fact as to the likelihood of consumer confusion, an essential element of the claim. *Lipton*, 71 F.3d at 473; *accord Stratta v. George Duke Enters., Inc.*, No. 96 Civ. 2720, 1997 WL 282250, at *4 (S.D.N.Y. May 27, 1997) ("An essential element of a Lanham Act claim is confusion in the marketplace as to the source of origin of the product in question."). Accordingly, Sun Trading's Lanham Act claim arising from the Stitt recording fails as a matter of law.

### c. *The Roney Recording*

█ As for the Roney recording, in its brief opposing summary judgment, Sun Trading uses language and cites case law suggesting that it is making an argument for "reverse passing off";[2] however, Sun Trading is in fact attempting to articulate a theory of false advertising. Plaintiff argues that by changing the design of the "Sax Storm" album cover for U.S. distribution (placing only Roney's and another musician's pictures on the front cover of the album and displaying Roney's name and likeness more prominently than the others on the back cover of the album), Evidence has created a false impression that Roney is a lead musician on the album, when he is in fact merely a side-

man. Such action, plaintiff contends, creates consumer confusion in violation of the Lanham Act. This allegation sounds in false advertising because Sun Trading contends that Evidence falsely describes or represents the true nature of Roney's performance on the "Sax Storm" album.

Sun Trading's evidentiary support for a false advertising theory consists of several paragraphs in Mr. Field's declaration describing the manner in which Evidence misrepresents the contents of the Roney recording, along with a copy of the repackaged "Sax Storm" album cover and Mr. Fields's sweeping statement that "damages have incurred" as a result of Evidence's use of Stitt's name and likeness on its own album covers. While the album cover itself is arguably misleading in some respect, Sun Trading has presented no concrete evidence of the likelihood of or actual consumer confusion.

█ "Likelihood of injury ... will not be presumed, but must be demonstrated," *Johnson & Johnson*, 631 F.2d at 190, and, here, Sun Trading has offered nothing more than its mere "subjective belief" that it has been, or is likely to be, injured. *See id.* at 189. It has conducted no consumer surveys tending to demonstrate confusion, nor has it presented any circumstantial evidence of confusion, such as proof that Evidence's release of the "Sax Storm" album has caused Evidence to realize an increase in sales to the detriment of Sun Trading's own sales. *Cf. id.* at 190–91 (holding that plaintiff's proof of increase in defendant's sales and a corresponding decrease in plaintiff's sales, testimony from a consumer witness that she changed products based on defendant's false advertising, and survey evidence of consumer confusion was "enough to prove a likelihood of competitive injury resulting from the [defendant's] advertising"). Without some evidence that the repackaged "Sax Storm" album cover is likely to deceive or confuse consumers, plaintiff cannot prevail on its false advertising claim. Nor may plaintiff avail itself of the lesser

---

**2.** Plaintiff cites several cases in support of the proposition that courts have sustained Lanham Act claims grounded on a theory of "reverse passing off." Plaintiff's reliance on these cases is misplaced because whether "reverse passing off" is actionable under the Lanham Act is not in dispute. Rather, the issues under consideration are whether Evidence's conduct amounts to "reverse passing off" at all, and whether such conduct causes consumer confusion to plaintiff's detriment.

showing required for injunctive relief based on a false advertising theory, *see Mobius Management,* 880 F.Supp. at 1021–22, for Sun Trading does not argue that Evidence's album covers are "literally or explicitly false"; rather, it merely claims that they are deceptive and misleading.

If Sun Trading cannot make the requisite showing of likelihood of consumer confusion to entitle it to injunctive relief, it certainly cannot make the heightened showing of actual consumer confusion or deception required to entitle it to money damages. *See PPX,* 818 F.2d at 271. Consequently, Sun Trading's Lanham Act claim stemming from the Roney recording also fails as a matter of law. *Cf. Arden v. Columbia Pictures Indus., Inc.,* 908 F.Supp. 1248, 1263 (S.D.N.Y.1995) (granting defendant's motion for summary judgment on Lanham Act claim because plaintiff failed to raise "a reasonable fact issue regarding the 'likelihood of confusion,' an essential element of a Lanham Act claim").

It may well be that Sun Trading has valid claims, but it does not have valid claims under the Lanham Act. As Judge Sotomayor has stated, "The Lanham Act ... should not be used as a remedy for a bruised ego. The Lanham Act should not be used to transform a breach of contract dispute into a federal cause of action." *Stratta,* 1997 WL 282250, at *5.

### 2. *State Law Claims*

■ The Court need not consider Sun Trading's state law claims. In dismissing the Lanham Act claims, the Court has the discretion whether to exercise jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3); *see also United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Reese Publ'g Co. v. Hampton Int'l Communications, Inc.,* 620 F.2d 7, 13 (2d Cir.1980) (holding that when a Lanham Act claim is dismissable upon motion, state law claims should be dismissed without prejudice). The Court declines to exercise jurisdiction over such claims. Accordingly, Sun Trading's state law claims are hereby dismissed without prejudice to re-filing in state court.

### B. *Plaintiff's Cross Motion for Leave to Amend the Complaint*

■ Sun Trading moves for leave to amend its complaint to include Kenwood Japan and Art Union Records as defendants, in place of Kenwood Electronics Corp. The Court finds that amendment of the complaint at this stage would be futile. Even if Sun Trading were able to determine the proper Kenwood entities and add them as defendants, its claims against these entities would fail as a matter of law for the reasons stated above. Accordingly, plaintiff's motion for leave to amend the complaint is hereby denied. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (holding that futility is among the reasons for denying leave to amend a complaint).

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted as to plaintiff's Lanham Act claims, and the Court declines to exercise supplemental jurisdiction over the remaining state law claims. Defendants' application for an award of costs pursuant to 15 U.S.C. § 1117 is denied, as the Court does not find that plaintiff's Lanham Act claims were brought for an improper purpose. The Clerk of the Court shall enter judgment in favor of defendants dismissing the complaint, with prejudice as to the Lanham Act claims and without prejudice as to the state law claims, and without fees or costs.

SO ORDERED.