Sonia M. LANDRAU, et al., Plaintiffs,

v.

Jose E. SOLIS–BETANCOURT,
et al., Defendants.

Civil No. 06–1773(FAB).

United States District Court,
D. Puerto Rico.

May 19, 2008.

Raymond A. Cabrera, Silvia G. Rico-Medina, Cabrera & Rico, San Juan, PR, for Plaintiffs.

PHV Kim Hoyt-Sperduto, PHV T. Stewart Rauch, The Sperduto Law Firm, PLC, Washington, DC, Angel Lopez-Hidalgo, Jose Enrique Nassar-Veglio, Enrique Nassar Rizek & Associates, San Juan, PR, for Defendants.

## OPINION AND ORDER

FRANCISCO A. BESOSA, District Judge.

## I. Procedural History

On December 28, 2007, defendant Jose E. Solis–Betancourt ("Solis") filed a motion for summary judgment (Docket No. 49). The motion was opposed by plaintiffs Sonia M. Landrau ("Landrau"), her husband, Eduardo Garcia–Garcia, the conjugal partnership constituted between them, and the architecture firm of Garcia & Landrau Arquitectos (collectively "plaintiffs") on January 18, 2008 (Docket No. 86). Defendant Solis then filed a reply to plaintiffs' opposition on February 1, 2008 (Docket No. 93). On January 8, 2008, before defendant Solis filed his reply, plaintiffs filed their own motion for summary judgment (Docket No. 68). That motion was opposed by defendant Solis on January 18, 2008 (Docket No. 84). Subsequent to a re-opened discovery period and a new deadline for dispositive motions, defendant Solis filed a supplemental motion for summary judgment (Docket No. 105). Plaintiffs opposed the supplemental motion for summary judgment on April 9, 2008 (Docket No. 121). Defendant Solis then filed a multi-part motion, including a motion to strike on April 11, 2008 (Docket No. 126). Plaintiffs opposed this motion on April 25, 2008 (Docket No. 130).

For the reasons discussed below, the Court **grants** defendant Solis' motion for summary judgment (Docket No. 49), takes note of defendant Solis' supplemental motion for summary judgment (Docket No. 105), takes note of defendant Solis' motion to strike (Docket No. 126), and **denies** plaintiffs' motion for summary judgment (Docket No. 68).

## II. Factual Background

### A. Architectural Digest Article

Architectural Digest ("AD") is the leading monthly magazine in the United States regarding contemporary architecture and interior design. Each issue of AD features several profiles on selected design projects, abundantly illustrated, which describe the salient features of the designs, the genesis of the projects, and the tastes of the property's homeowners. Each article credits its author, the photographer whose images illustrate it, and the architect and/or interior designer of the featured property.

On May 29, 2002, Paul Sherrill ("Sherrill"), an architect and partner in the Washington, DC-based architecture and design firm of Solis–Betancourt wrote to James Munn, then AD's Administrative Coordinator, describing the work the firm had performed in Puerto Rico in the home of Sergio Ramirez-de Arellano ("Ramirez-de Arellano") and Teresa Del Valle ("Del Valle") (collectively "the homeowners.") Sherrill stated in the letter that the firm had developed the architecture and interiors of the house and enclosed several photographs. Munn requested additional photographs of the house, which defendant Solis took and sent to Munn on August 13, 2002. On October 3, 2002, James Huntington, AD's Photographer Director, informed defendant Solis that a full photography shoot of the house had been authorized, and sent him AD's standard Design Credit Information form to complete and an Authorization for Publication letter to be forwarded to the homeowners. On October 16, 2002, Sherrill returned the completed Design Credit Information form to AD.

The form indicated that defendant Solis was both the designer and architect of the house, and that Sherrill should also be credited for the project. The Authorization for Publication letter granted AD access to the homeowners' residence, and permission to publish photographs and a description of the house.

That same month, AD sent Dan Forer, a freelance photographer, to take photographs of the house. Forer traveled to Puerto Rico and photographed the residence's interiors and exteriors. He also took pictures of defendant Solis and Sherrill at the house. AD forwarded these photographs to defendant Solis, along with fact and credit sheets for each one where he was asked to indicate the authorship and source of the artwork and furniture displayed in the photographs.

AD assigned Penelope Rowlands, a freelance writer and frequent contributor to AD, to write the article on the house. Rowlands visited the residence and interviewed both the homeowners and defendant Solis before submitting her article.

The article appeared in the December 2003 issue of AD, titled "Taking the Cure." The article was not referenced in the magazine's cover and is the last article featured in the issue. The article covered six pages and included nine photographs. All but two of the photographs are interior shots and emphasize the interior design of the residence. The article did not include the architectural plans nor did it discuss the architectural design of the house in great detail. The article credits defendant Solis as the architect and interior designer of the residence based upon his representations to AD.

On December 16, 2003, Landrau wrote a letter to AD claiming that the firm of Garcia & Landrau was the actual architect of the house, and not defendant Solis as stated in the article, and requesting a re-traction. AD forwarded Landrau's letter to defendant Solis. On January 23, 2004, defendant Solis responded, stating that the Garcia & Landrau firm had been contracted for the sole purpose of expediting working drawings of the house in order to obtain building permits, but only after he and the client had firmly developed a program, design, and aesthetic direction for the project. Defendant Solis further stated that Garcia & Landrau were hired for their technical skills and had not been consulted on the aesthetics and design of the project. Based on these statements, on February 2, 2004, AD informed Landrau that it would not print a retraction because it had been assured that it had correctly credited the design of the house.

On January 3, 2004, a San Juan newspaper, *El Nuevo Dia*, published an article about Luis Llenza, a landscape architect who worked on the Ramirez-de Arellano/Del Valle residence. The article referenced his landscaping work around the house and that it had been showcased in AD. The article repeated AD's credit of defendant Solis as the architect of the house.

**B. Services provided by Solis–Betancourt and Landrau to the homeowners**

Mrs. Del Valle first met with defendant Solis in the spring of 1997 to discuss redesigning the residence. Del Valle then retained defendant Solis to work on the residence. The agreement between Del Valle and Solis–Betancourt, Inc., dated June 3, 1997, calls for defendant Solis to create the design concept for the project through the generation of schematic designs, including scaled floor plans and elevations. Defendant Solis created architectural and interior designs pursuant to the agreement. Once Del Valle realized the cost involved in renovating her existing home, however,

she decided to build a new house altogether instead of renovating her then existing residence.

In the summer of 1998, Del Valle presented defendant Solis with a rough conceptual sketch of the configuration of the new residence. Del Valle and defendant Solis then worked together to outline the spatial configuration of the new house. On or about September 11, 1998, Del Valle retained Landrau and her firm. There is a factual dispute between the parties as to whether Landrau was then informed that defendant Solis had been retained by the homeowners to provide design concepts and guidance. Regardless, in September, 1998, Del Valle provided Landrau with a "croquis," also known as a sketch, containing the configuration of the new residence. Defendant Solis implies that this "croquis" was influenced by his design concepts and Landrau denies that she was aware of defendant Solis' involvement in the project at this point.

At a more fundamental level, there is a dispute between the parties as to who was the creative force behind the architectural design of the new residence. Defendant Solis maintains that Landrau was retained only to provide "technical working drawings" in order to obtain building permits from the Administracion de Reglamentos y Permisos ("ARPE"), the local regulatory authority. Defendant Solis adduced evidence, for example, that Del Valle provided him with successive drafts of Landrau's architectural plans for the new residence, which defendant Solis reviewed and modified. Del Valle then provided defendant Solis' changes to Landrau so that the modifications would be incorporated in the design that was ultimately submitted to and approved by ARPE. Defendant Solis also provided modifications to the plan approved by ARPE, which were incorporated into the final design of the house by the construction manager. Landrau's services were terminated once the homeowners obtained ARPE approval, whereas defendant Solis continued to work on the project.

Landrau disputes that defendant Solis played any role in the development of the architectural design of the house, adding that if her architectural design plans were shown to defendant Solis for modification, it was done without her knowledge. Indeed, Landrau adduced evidence that both she and Raul Fortuño, the construction manager for the residence, believed that defendant Solis was involved in interior design or decoration (and not the architecture of the residence). For example, Fortuño labeled "cosmetic" the design changes carried out during construction, which he attributed to defendant Solis.

There is no signed written contract for services between Del Valle and Landrau. Although Landrau sent Del Valle a letter containing a fee proposal and attached an American Institute of Architects ("AIA") form contract, discussing architectural services, Del Valle did not sign the fee proposal or the AIA form contract. The parties dispute whether Del Valle orally agreed to abide by the AIA contract.

## III. Discussion

### A. Summary Judgment Standard

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. The Rule states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Santiago–Ramos v. Centennial P.R. Wireless Corp.,*

217 F.3d 46, 52. (1st Cir.2000). Cross motions for summary judgment do not change the standard. *Latin American Music Co. v. The Archdiocese of San Juan of the Roman Catholic & Apostolic Church*, 499 F.3d 32, 38 (1st Cir.2007). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir.2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine." Material means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is genuine when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that " '[t]he mere existence of a scintilla of evidence' is insufficient to defeat a properly supported motion for summary judgment." *Id.* at 252, 106 S.Ct. 2505. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore, however, "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

**B. Lanham Act Claim: 15 U.S.C. § 1125(a)(1)(A) or 15 U.S.C. § 1125(a)(1)(B)**

The threshold issue facing the Court is whether the plaintiffs' bring their claim pursuant to the Lanham Act under 15 U.S.C. § 1125(a)(1)(A) or under 15 U.S.C. § 1125(a)(1)(B). The Court is faced with this question because of the ambiguous nature of the plaintiffs' filings, an ambiguity that is not supported in the case law.

Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a), provides two distinct causes of action: (1) false representations concerning the origin, association or endorsement of goods or services ("false association" or "false designation of origin") (§ 1125(a)(1)(A)); and (2) false representations in advertising concerning the quality of goods or services ("false advertising") (§ 1125(a)(1)(B)); *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, 277 F.3d 253, 259 (2d Cir. 2002); *Stanfield v. Osborne Indus., Inc.*, 52 F.3d 867, 873 (10th Cir.1995); *Waits v. Frito–Lay, Inc.*, 978 F.2d 1093, 1108 (9th Cir.1992). Plaintiffs' statutory references in the complaint did not distinguish between the two causes of action. Rather, plaintiffs generically referred to "section 35(a) of the Lanham Act" and "15 U.S.C.A. § 1125(a)" without defining their claims in terms of false designation of origin or false

advertising (Docket No. 1, ¶¶ 30,33). Plaintiffs provided some insight into their Lanham Act claim, however, by deeming it an action for "reverse palming off" (also known as "reverse passing off") (Docket No. 1, ¶ 30).

■ Reverse palming off occurs when a wrongdoer removes the designation of origin from a plaintiff's product and then sells the product under its own name. *Sun Trading Distributing Co. v. Evidence Music, Inc.,* 980 F.Supp. 722, 727 (S.D.N.Y. 1997). Reverse palming off occurs almost exclusively under section 1125(a)(1)(A), the false designation of origin prong.[1] *See, e.g., Lipton v. Nature Co.,* 71 F.3d 464, 473 (2d Cir.1995). Indeed, it was under this prong of Section 43(a) that the Court interpreted plaintiffs' Lanham Act claim in its May.21, 2007 Opinion and Order (Docket No. 110). At the very least, plaintiffs failed to allege that defendants' reverse palming off occurred in commercial advertising or promotion (Docket No. 1). This has not stopped plaintiffs from constructing a revisionist history, however, in which they characterized the AD article itself as advertising, arguing that they implicitly plead misrepresentation in commercial advertising or promotion. Certainly, throughout their summary judgment fil-

ings and their proposed pretrial order plaintiffs maintained that they have a reverse passing off claim arising under the false advertising prong of Section 43(a)(1)(B) (Docket Nos. 68, pp. 2–8; 86, pp. 3–6; 106, p. 47; 121, pp. 3–6).[2]

As defendants urge, plaintiffs' failure to state a false advertising claim unambiguously under 15 U.S.C. § 1125(a)(1)(B) prior to their summary judgment related motions could be, by itself, grounds for dismissal of plaintiffs' claim. *See, e.g., Gilmour v. Gates, McDonald and Co.,* 382 F.3d 1312, 1315 (11th Cir.2004) (preventing plaintiff from adding an additional claim in her opposition to summary judgment that was not in her complaint); *Shanahan v. City of Chicago,* 82 F.3d 776, 781 (7th Cir.1996); *Fisher v. Metro. Life Ins. Co.,* 895 F.2d 1073, 1078 (5th Cir. 1990) (same); *Silverstein v. Penguin Putnam, Inc.,* 522 F.Supp.2d 579, 603 (S.D.N.Y.2007) (denying plaintiff's claim that a cause of action existed for "false promotion" where the complaint only referenced the Lanham Act generally and included an allegation of "passing off plaintiff's work as its own"); *but cf. Martinez v. Potter,* 347 F.3d 1208, 1211–12 (10th Cir.2003) (noting that the Tenth Circuit Court of Appeals treats claims added

---

1. Neither party brought to the Court's attention any case involving the application of "reverse passing off" under the false advertising prong of Lanham Act Section 43(a)(1)(B). In its own review of case law, the Court found one such case, *John Wright, Inc. v. Casper Corporation,* 419 F.Supp. 292, 325–28 (E.D.Pa.1976), *aff'd in part, rev'd in part on other grounds, Donsco, Inc. v. Casper Corp.,* 587 F.2d 602 (3rd Cir.1978). The court finds the *John Wright* opinion to have little persuasive influence, however, because it did not use either of the tests for reverse passing off or false advertisement which are commonly used by courts today.

2. Plaintiffs included a discussion of false advertising case law in their motion to dismiss

filed in the companion case, no. 05–2185 (CN: 05–2185, Docket No. 42, pp. 13–18) on January 23, 2007. Nonetheless, this reference did not clarify the nature of plaintiffs' Lanham Act claim because the references to false advertising cases only occurred in the plaintiffs' discussion of the likelihood that a false designation of origin would cause consumer confusion, an element of a reverse passing off claim (not a false advertising claim). Plaintiffs did not independently present a false advertising claim discussing all of the elements for a claim in their opposition to defendant's motion to dismiss. *See Cashmere & Camel Hair Manuf. Inst. v. Saks Fifth Avenue,* 284 F.3d 302, 310–11 (1st Cir.2002).

in an opposition to summary judgment as a request to amend the complaint). Nevertheless, because this Court prefers to resolve matters upon the merits rather than upon procedural grounds when it can do so without causing any additional undue prejudice to a party-opponent, plaintiffs' Lanham Act claim shall be analyzed under the false advertising prong of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). Plaintiffs' stillborn claim under 15 U.S.C. § 1125(a)(1)(A), if it ever existed, is hereby dismissed with prejudice as abandoned. *Cf., Landrau–Romero v. Banco Popular De Puerto Rico*, 212 F.3d 607, 612 (1st Cir.2000) (finding appellant's argument waived where appellant failed to raise argument in his opposition to appellee's motion for summary judgment); *U.S. v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

### C. False Advertising Claim

■ "To prove a false advertising claim under the Lanham Act, a plaintiff must demonstrate that (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." *Cashmere & Camel Hair Manuf. Inst. v. Saks Fifth Avenue*, 284 F.3d at 310–11. A "crucial [statutory] limitation" of the Lanham Act, is that it only applies to "commercial advertising or pro-

motion." *Podiatrist Association, Inc. v. La Cruz Azul De Puerto Rico, Inc.*, 332 F.3d 6, 19 (1st Cir.2003).

■ Courts use a four-part test to determine which representations fall into the category of "commercial advertising or promotion" pursuant to 15 U.S.C. § 1125(a)(1)(B). *Id.* To constitute commercial advertising or promotion, the "representation must (a) constitute commercial speech (b) made with the intent of influencing potential customers to purchase the speaker's goods or services (c) by a speaker who is a competitor of the plaintiff in some line of trade or commerce and (d) disseminated to the consuming public in such a way as to constitute 'advertising' or 'promotion.'" *Id.* The failure to provide factual support for any of these elements is fatal to a false advertising claim under the Lanham Act. *See Encompass Insurance Co. Of Mass. v. Giampa*, 522 F.Supp.2d 300, 311 (D.Mass.2007). Plaintiffs' claim fails under the first prong of this four-part test. The challenged speech, in this case an article in AD, is not commercial speech.

The "core notion" of commercial speech is "speech which does no more than propose a commercial transaction." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993) (quoting *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 66, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983)(internal quotations omitted)). The "Taking The Cure" article published in the December 2003 issue of AD proposed no commercial transactions. It merely displayed the Ramirez-de Arellano/Del Valle residence through prose and photographs, crediting defendant Solis for the work and making no mention of Landrau. AD itself is the leading monthly magazine dedicated to contemporary architecture and interior de-

sign. The "Taking the Cure" article was researched by a freelance writer and a freelance photographer both of whom were paid by AD. Defendant Solis, his partner, and the homeowners did not pay AD or its owners for the article.

Plaintiffs have noted, however, that defendant Solis' partner, Sherrill, brought the house to the attention of AD's editors. Presumably Sherrill did this to gain notoriety for defendant Solis' work. Building upon that assumption, it may be that defendant Solis, as the party credited with the architectural design of the house in the article, may attract clients based in part upon the article. Nonetheless, even assuming defendant Solis (or his partner) had an economically-based motivation for providing the journalist with information that was later included in the article, that alone is not sufficient to transform the article into commercial speech. *See Bolger*, 463 U.S. at 67, 103 S.Ct. 2875 ("the fact that [defendant] has an economic motivation for mailing the pamphlets would clearly be insufficient by itself to turn the materials into commercial speech."); *Gmurzynska v. Hutton*, 355 F.3d 206 (2d Cir.2004) ("The journalist's article is not commercial advertising, commercial promotion, or commercial speech. Rather, it is speech that is traditionally granted full protection under the First Amendment."); *see also Croton Watch Co., Inc. v. National Jeweler*, 2006 WL 2254818, *10 (S.D.N.Y. Aug.7, 2006) ("A plaintiff cannot adequately plead a violation of the Lanham Act by simply alleging that defendant caused a journalist to write the article, the content of which plaintiff finds objectionable."); *Donini Int'l S.p.A. v. Satec (U.S.A.) LLC*, 2004 WL 1574645, *7 (S.D.N.Y. July 13, 2004). Plaintiffs have adduced no other facts that would transform the article in an independent magazine into commercial speech. The article entitled "Taking the Cure" in the December 2003 edition of AD

is not commercial speech; rather, it is due full protection under the First Amendment. Therefore, the representations made in that article are not grounds for a false advertising claim pursuant to 15 U.S.C. § 1125(a)(1)(B).

### D. Supplemental Puerto Rico Law Claims

Because no federal claims remain to ground jurisdiction in this case, plaintiffs' state law claims against defendant Solis and defendant Solis' state law counterclaims against plaintiffs are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** defendant Solis' motion for summary judgment, **DENIES** plaintiffs' motion for summary judgment, takes note of defendant Solis' supplemental motion for summary judgment, and takes note of defendant Solis' motion to strike. Plaintiffs' Lanham Act claim, the sole remaining federal claim, is **dismissed with prejudice.** The supplemental state law claims and counterclaims are **dismissed without prejudice.** Judgment shall enter accordingly.

IT IS SO ORDERED.